JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* CORPORACIÓN DE CRÉDITO AGRÍCOLA, demandada.

*Número:* JR-89-42          *Resuelto:* 7 de diciembre de 1989

*Luis B. Osorio Díaz*, abogado de la peticionaria; *Héctor Manuel Aponte Ortiz*, de *Aponte, Hernández, Nevares & Torres*, abogado de la demandada.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

El agrónomo José R. Encarnación, empleado regular de la Corporación de Crédito Agrícola (Corporación), fue suspendido sumariamente de empleo y sueldo durante el período del 15 de enero de 1988 hasta el 25 de mayo de 1988. La Corporación tomó la decisión de no pagarle al empleado la aportación patronal al seguro médico grupal durante este

período por él no haber brindado servicios más de quince (15) días durante el mes de enero. El empleado presentó una querella mediante la cual solicitaba el pago y posteriormente las partes sometieron la controversia a arbitraje en las oficinas del Negociado de Conciliación y Arbitraje del Departamento del Trabajo.

El patrono y la Unión hicieron una estipulación de hechos en la que acordaron que el árbitro extraería la sumisión de los proyectos sometidos por ellos del convenio y de la estipulación de hechos. El árbitro determinó que el asunto a ser resuelto era el siguiente:

> Que el [Á]rbitro determine si el querellante al ser suspendido de empleo y sueldo durante un período de 90 días laborables que comprendía del 15 de enero de 1988, hasta el 25 de mayo de 1988, tiene o no derecho, conforme al Convenio Colectivo, a que se le pague la aportación patronal al seguro médido [sic] grupal existente. [En el caso que se determine que sí tiene derecho el [Á]rbitro proveerá el remedio adecuado.] *Exhibit* A, pág. 1.

Celebrada la vista, el árbitro determinó que la suspensión temporera del señor Encarnación no quebrantó su condición de empleado, por lo que no estaba excluido de recibir el beneficio de la aportación patronal. Ordenó a la Corporación que le pagara al empleado la aportación o que lo indemnizara por los gastos médicos en que incurrió durante ese período.

El patrono hizo caso omiso al laudo de arbitraje. La Junta de Relaciones del Trabajo de Puerto Rico (a tenor con la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, según enmendada, en su Art. 9(2)(c), 29 L.P.R.A. sec. 70(2)(c)), acudió ante nos para que pusiéramos en vigor el laudo. El 23 de febrero de 1989 requerimos al patrono que mostrara causa por la cual no debíamos ordenar que cumpliera con el laudo. Su comparecencia no nos persuade a variar la posición intimada.

I

La trayectoria de nuestras decisiones en materia de arbitraje obrero-patronal se caracteriza por una marcada deferencia hacia los laudos de arbitraje. En consonancia con este principio hemos reiterado que un laudo fundamentado en la sumisión voluntaria de las partes está sujeto a revisión judicial sólo si las partes convienen en que la controversia sometida al árbitro sea resuelta conforme a derecho. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 D.P.R. 62 (1987); *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, 116 D.P.R. 348 (1985); *J.R.T. v. National Packing Co.*, 112 D.P.R. 162 (1982); *J.R.T. v. Securitas, Inc.*, 111 D.P.R. 580 (1981); *J.R.T. v. Sucn. J. Serrallés*, 94 D.P.R. 343 (1967); *J.R.T. v. Sindicato Obreros Unidos*, 92 D.P.R. 60 (1965); *J.R.T. v. Executive House, Inc.*, 91 D.P.R. 798 (1965); *J.R.T. v. Cooperativa Cafeteros*, 89 D.P.R. 498 (1963); *Pérez v. Autoridad Fuentes Fluviales*, 87 D.P.R. 118 (1963); *Rivera Adorno v. Autoridad de Tierras*, 83 D.P.R. 258 (1961); *Junta Rel. del Trabajo v. Soc. Mario Mercado e Hijos*, 74 D.P.R. 403 (1953); *Junta Relaciones del Trabajo v. N.Y. & P.R. S/S. Co.*, 69 D.P.R. 782 (1949). En ausencia de disposición expresa a esos efectos, un laudo sólo puede ser impugnado si se demuestra la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión en resolver todas las cuestiones en controversia que se sometieron o que el mismo resulte contrario a la política pública. *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 D.P.R. 318 (1988); *J.R.T. v. Hato Rey Psychiatric Hosp.*, supra; *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, supra; *J.R.T. v. A.E.E.*, 113 D.P.R. 564 (1982); *J.R.T. v. Sindicato Obreros Unidos*, supra; *J.R.T. v. Cooperativa Cafeteros*, supra; *Rivera Adorno v. Autoridad de Tierras*, supra; *Junta Rel. Trabajo v. Orange Crush of P.R.*, 80 D.P.R. 292 (1958); *Junta Relaciones del Trabajo v. N.Y. & P.R. S/S. Co.*, supra; *Junta Re-*

*laciones del Trabajo v. Eastern Sugar*, 69 D.P.R. 818 (1949); *Ríos v. Puerto Rico Cement Corp.*, 66 D.P.R. 470 (1946).

En su comparecencia el patrono señala que el árbitro actuó sin jurisdicción e incurrió en conducta impropia al emitir el laudo fundamentado en la interpretación del convenio colectivo, ya que cuando sucedieron los hechos que dieron lugar a la controversia dicho convenio, suscrito el 17 de septiembre de 1984 con vigencia hasta el 18 de septiembre de 1987, había expirado y se estaba en el proceso de negociación del nuevo convenio colectivo que se firmó el 21 de diciembre de 1988. Alega que la inexistencia del convenio es una realidad que "invalida, altera y hace inexistente el propio proyecto de sumisión que fuera originalmente sometida [sic] por el patrono".[1] No le asiste la razón.

En *Ríos v. Puerto Rico Cement Corp.*, supra, pág. 477, reiterado en *Junta Rel. Trabajo v. Valencia Baxt*, 86 D.P.R. 282 (1962), reconocimos que un laudo puede ser anulado si existe algún defecto o insuficiencia en la sumisión de las partes. Posteriormente, en *Junta Relaciones del Trabajo v. N.Y. & P.R. S/S. Co.*, supra, pág. 803, nos expresamos sobre la función de las cortes al evaluar el acuerdo de sumisión de las partes y dijimos:

> Precisamente porque un laudo de arbitraje es final y obligatorio, el árbitro no determina su propia jurisdicción, a no ser que las partes lo acuerden. Compete a las cortes y no al árbitro interpretar el convenio de arbitraje con el fin de determinar qué cuestiones fueron sometidas a arbitraje por las partes. Y los contratos sobre arbitraje serán minuciosamente interpretados con el propósito de no forzar a una parte a someter a arbitraje una cuestión que no fu[e] su intención someter a arbitraje.

Un examen riguroso de los proyectos de sumisión sometidos por las partes y de la estipulación de hechos convenida

---

[1] Oposición a que se expida el auto, pág. 5, sometida por el Patrono.

nos mueve a concluir que la intención tanto del patrono como de la Unión era que el árbitro resolviera la controversia a tenor con el Convenio Colectivo suscrito el 17 de septiembre de 1984. Así, en el proyecto de sumisión del patrono se dispuso:

> Que el [Á]rbitro determine si el querellante al ser suspendido de empleo y sueldo durante un período de 90 días laborables que comprendía del 15 de enero de 1988, hasta el 25 de mayo de 1988, tiene o no derecho, conforme al Convenio [C]olectivo, a que se le pague la aportación patronal al seguro médico [sic] grupal existente. *Exhibit* A, pág. 1.

Y en el proyecto de sumisión de la Unión se dispuso:

> Que el [Á]rbitro determine si el querellante, agrónomo José R. Encarnación, tiene derecho a la aportación patronal que establece el Convenio Colectivo (Artículo XXVI) por el término en que esté suspendido sumariamente de empleo y sueldo pendiente del resultado del arbitraje contra tal suspensión. En el caso en que determine que sí tiene derecho, proveerá el remedio adecuado. *Exhibit* A, pág. 2.

Finalmente, en la estipulación de hechos las partes acordaron lo siguiente:

> El árbitro extraerá la sumisión del caso, de los proyectos sometidos por las partes, del Convenio y de la Estipulación de hechos. *Exhibit* A, pág. 3.

El árbitro, según lo acordado, determinó que la controversia a ser resuelta estaba comprendida precisamente en el proyecto de sumisión del patrono agregándole que en caso de que se determinara que el obrero tenía derecho a la aportación patronal, el árbitro proveería el remedio adecuado. Al así proceder no incurrió en conducta impropia; por el contrario, acató la intención de las partes y procedió a

resolver la controversia según el Convenio Colectivo suscrito el 17 de septiembre de 1984.[2]

Finalmente, alega el patrono que el árbitro erró en su interpretación del Art. XXVI del convenio referente al Plan Familiar de Salud, ya que dicho artículo establece que se pagará la aportación a los planes médicos si el empleado mantiene su condición como tal y si el convenio está vigente.

■ Ante este planteamiento nos abstendremos de intervenir, ya que las partes en el caso de autos no convinieron en que el laudo fuese emitido conforme a derecho. En esas circunstancias, los errores de criterio en cuanto a los hechos o al derecho cometidos por el árbitro no dan fundamento a la intervención y revisión judicial de la controversia y del laudo emitido. *J.R.T. v. Sucn. J. Serrallés*, supra; *J.R.T. v. Executive House, Inc.*, supra; *J.R.T. v. Cooperativa Cafeteros*, supra, pág. 503; *Junta Rel. Trabajo v. Orange Crush of P.R.*, supra, pág. 295; *Junta Relaciones del Trabajo v. N.Y. & P.R. S/S. Co.*, supra, pág. 800.

Por los fundamentos expuestos, *concluimos que se trata de un laudo válido que no adolece de causa de nulidad, por lo que procede que el mismo se ponga en vigor.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Hernández Denton concurre con el resultado sin opinión escrita.

---

(2) Por cuanto la Ley Núm. 97 de 15 de julio de 1988 (29 L.P.R.A. sec. 69(1)(k)) no estaba en vigor cuando se suscitó la controversia en el caso de autos, resulta innecesario expresarnos en este momento sobre la citada ley que dispuso que constituye una práctica ilícita de trabajo la negativa del patrono a hacer los pagos al plan médico mientras se está negociando un nuevo convenio colectivo, siempre que la Unión haya requerido previamente al patrono que continúe haciendo los pagos.