Segarra Olivero, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCION
El peticionario, Dr. Adalberto Mendoza, nos solicita la revisión de una resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, mediante la cual se ordenó la consolidación de los casos JPE-93-0114 y JAC-93-0273 y que, así consolidados, fuesen sometidos al procedimiento de arbitraje.
Por las razones que más adelante expondremos, expedimos el auto solicitado y confirmamos la resolución recurrida.
I
Examinemos el trasfondo fáctico y procesal que dio margen a la presentación de este recurso.
El 1 de agosto de 1987 el Hospital Santo Asilo de Damas, en adelante el Hospital, y el peticionario, Dr. Adalberto Mendoza, en lo sucesivo el Dr. Mendoza, suscribieron un contrato de servicios profesionales por un término de tres años, el cual fue posteriormente extendido hasta el 31 de julio del año 2001.
En virtud de las cláusulas del referido contrato, el Dr. Mendoza se obligó a dirigir el Departamento de Patología del Hospital y a desempeñarse como Director Profesional y Administrativo del Departamento de Patología, Laboratorio Clínico y Banco de Sangre.
El 12 de enero de 1993, el Dr. Mendoza renunció a su puesto de miembro ex-oficio del Comité Ejecutivo de la Facultad Médica del Hospital. El 1 de abril de 1993 el administrador del Hospital le envió una carta al Dr. Mendoza en la que se le comunicaba que su renuncia como miembro ex-oficio de la Facultad Médica constituyó también una renuncia a su puesto como director del Departamento de Patología del Hospital y que por tal razón quedaba relevado del puesto que allí ocupaba.
*813 El 7 de junio de 1993 el Hospital presentó una demanda sobre sentencia declaratoria y daños y perjuicios contra el Dr. Mendoza, su esposa y la sociedad legal de gananciales compuesta por ambos, caso civil número JAC-93-0273. El Hospital alegó que el Dr. Mendoza había renunciado voluntariamente a la posición que ocupaba en el Hospital, lo cual constituía una violación al contrato de servicios profesionales otorgado por las partes. El Hospital señaló, además, que el Dr. Mendoza había incurrido en otras violaciones al contrato, las cuales detallaremos más adelante. Por ello, solicitó que se dictara una sentencia que decretara que el Hospital tenía la facultad de resolver el referido contrato y que se le concedieran daños por las acciones del Dr. Mendoza.
Cuatro días más tarde, el 11 de junio de 1993, el Dr. Mendoza, su esposa y la sociedad legal de gananciales compuesta por ambos, acudieron ante el Tribunal de Primera Instancia, Sala Superior de Ponce, con una petición de entredicho provisional e injunction, caso número JPE-93-0114, en la que alegaron que el Dr. Mendoza había sido despedido y, en su consecuencia, solicitaron que dicho asunto fuese sometido a arbitraje, de conformidad con lo dispuesto en la cláusula dieciséis (16) del contrato de servicios profesionales.
Por su parte, el Hospital, en su contestación a la petición, adujo que la disputa sobre la renuncia o la destitución del Dr. Mendoza no era arbitrable pues la cláusula de arbitraje no cubría dicho asunto. Por ello, el Hospital solicitó que la petición de entredicho provisional e injunction se dilucidara junto con la acción civil sobre sentencia declaratoria y daños y perjuicios.
El 25 de octubre de 1993, el Tribunal de Primera Instancia, por voz del Hon. Miguel Montalvo, J., en el caso JPE-93-0114, resolvió que todos los servicios que el Dr. Mendoza prestaba en el Hospital estaban comprendidos dentro de la definición de servicios profesionales provista en el contrato otorgado por las partes. El tribunal a quo concedió al Dr. Mendoza el remedio interdictal solicitado, ordenó al Hospital a someterse ante un panel de arbitraje designado por ambas partes o ante un árbitro, y paralizó los procedimientos en el caso número JAC-93-0273 hasta que el laudo de arbitraje fuere emitido.
Las partes intentaron infructuosamente designar aun árbitro. Así las cosas, el 31 de enero de 1997, la Hon. Leída González Degró, J., nombró al Ledo. Hiram Torres Rigual, ex-juez del Tribunal Supremo de Puerto Rico, para que actuara como árbitro. El distinguido jurista se reunió con la representación legal de ambas partes con el propósito de discutir, entre otras cosas, el acuerdo de sumisión. Sobre este asunto, las partes no pudieron ponerse de acuerdo. Por un lado, el Dr. Mendoza sostenía que el único asunto arbitrable era su despido y, por otro lado, el Hospital entendía que las controversias planteadas en el pleito sobre sentencia declaratoria y daños y perjuicios, caso núm. JAC-930273, también estaban sujetas al procedimiento de arbitraje. 
Ante la discrepancia que parecía insalvable, el Ledo. Torres Rigual renunció a su designación de árbitro y refirió el expediente del caso a la Hon. Leída González Degró, J., para que tomara la acción correspondiente. El 21 de marzo de 1997, el Tribunal de Primera Instancia, por voz de la referida juez, emitió la resolución recurrida en la cual ordenó la consolidación de los casos núm. JAC-93-0273 y el JPE-93-0114 debido a la estrecha relación que existe entre los mismos y que, así consolidados, fuesen sometidos a un árbitro. El tribunal a quo concluyó, además, en lo pertinente, lo siguiente:

"Tomando en consideración que este caso ya lleva casi cuatro años de radicado y que ha habido gran dificultad para la selección de un árbitro, el tribunal entiende que debe ejercer su facultad para delinear los asuntos a ser sometidos al árbitro, en aras de lograr la justicia rápida y económica que las partes merecen...

La controversia en este caso gira en torno a si el despido del demandante se debió al incumplimiento por éste de algunas de las obligaciones profesionales que emanan del contrato. Para dirimir esta controversia, el árbitro deberá considerar si las actuaciones del demandante en las áreas profesionales que cubre el contrato, según antes indicamos, constituían un incumplimiento de contrato que diese base para que el Hospital resolviese el contrato y despidiese al demandante, o si, por el contrario, fue el Hospital quien incumplió el contrato al despedir al demandante antes del vencimiento del mismo y sin causa imputable a éste. Además de ello, tendrá facultad el árbitro para conceder los remedios apropiados a las partes, si se determinase que hubo un incumplimiento de 
*814
alguna de ellas, incluyendo la concesión de daños que el incumplimiento hubiese ocasionado".

Inconforme con este dictamen, el peticionario acude ante nos mediante el presente recurso en el que señala que erró el tribunal recurrido: (1) al variar una orden interdictal sin que haya habido cambio en el estado de derecho ni en los hechos y sin que se le haya solicitado una orden interdictal; 2) al no ajustarse a la norma de que el arbitraje es materia contractual y al haber ordenado que se sometan al procedimiento de arbitraje asuntos que no están comprendidos en la cláusula de arbitraje pactada; y (3) al delimitar el acuerdo de sumisión, violentando así el principio de voluntariedad que informa el arbitraje. La parte recurrida, el Hospital, presentó su oposición a la petición de certiorari.
Examinados los escritos de ambas partes, así como la ley y la jurisprudencia aplicable, nos encontramos en posición de resolver.
H
La cuestión principal que se nos plantea en el presente recurso gira en torno al alcance de la cláusula de arbitraje pactada voluntariamente por las partes y plasmada en el contrato de servicios profesionales.
Examinemos, pues, el contrato denominado "Professional Service Contract-Department of Pathology". La cláusula 4 del mismo describe los servicios que prestaría el Dr. Mendoza en el Hospital, los cuales están divididos en dos áreas principales, a saber: responsabilidades profesionales y responsabilidades administrativas. El inciso (c) de dicha cláusula provee como sigue:

"The medical services to be rendered by the PATHOLOGIST pursuant to this agreement shall include clinical and anatomical pathology services and blood bank services to the HOSPITAL'S patients, as well as all other provider services as specified in Exhibit B of this agreement."

El Exhibit B, a su vez, está dividido en dos secciones. La primera está titulada "THE , PATHOLOGIST'S PROFESSIONAL RESPONSIBILITIES" y la segunda "THE PATHOLOGIST'S ADMINISTRATIVE RESPONSIBILITIES".
La cláusula 11 del contrato de servicios profesionales dispone lo relativo a la compensación que recibirá el Dr. Mendoza y lee como sigue:

"11. COMPENSATION FOR PROFESSIONAL SERVICES:

a. FOR PROVIDER SERVICES- for provider services, which are generally defined as departmental administration, supervision of personnel, teaching, quality control, comittee and Board participation, and all other functions not specifically related to direct patient care, the HOSPITAL shall pay the PATHOLOGIST for provider services responsibilities as described in Exhibit B of this agreement the following sums...

b. FOR DIRECT PATIENT CARE- The HOSPITAL shall not bill or collect for physician services attributable to the physician's professional component."

Por su parte, la claúsula 16 del contrato provee para el arbitraje compulsorio:

"16. COMPLAINT RESOLUTION:

In the event disputes over professional matters arise, the HOSPITAL and the PATHOLOGIST agree to arbitration by persons or by a special committee designed and mutually agreed upon by the parties subject to this agreement". (Enfasis nuestro.) 
Nuestro ordenamiento legal dispone que "[d]os o más partes podrán convenir por escrito en someter a arbitraje...cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo..." Art. de la Ley Núm. 376 de 8 de mayo de 1951, 32 L.P.R.A. *815 sec. 3201.
La arbitrabilidad de una controversia, esto es, la determinación de si un acuerdo crea el deber de las partes de arbitrar una controversia en particular, es tarea judicial. World Films v. Paramount Pictures, 125 D.P.R. 352, 361 (1990). Compete a las cortes y no al árbitro interpretar el convenio con el fin de determinar qué cuestiones fueron sometidas a arbitraje por las partes. J.R.T. v. Corp. de Crédito Agrícola, 124 D.P.R. 846, 850 (1989).
El Tribunal Supremo ha expresado repetidamente que existe una presunción de arbitrabilidad cuando el contrato tiene una cláusula de arbitraje y que en nuestro ordenamiento permea una fuerte política pública en favor del arbitraje. World Films v. Paramount Pictures, supra. Por ello, toda duda respecto a la existencia o no de dicho procedimiento debe resolverse a su favor. Id.; Universidad Católica de Puerto Rico v. Triangle Engineering Corp., _ D.P.R. _ (1994), 94 J.T.S. 72.
El Tribunal Supremo añadió en World Films v. Paramount Pictures, supra, que la naturaleza y la extensión de los poderes del árbitro están delimitados por el lenguaje y la intención del acuerdo de arbitraje y que, como regla general, cuando la cláusula de arbitraje es lo suficientemente amplia, el árbitro tiene autoridad legal para adjudicar prácticamente todo tipo de controversia legal. Id., a la pág. 362.
En Universidad Católica de Puerto Rico v. Triangle Engineering Corp., supra, nuestro más Alto Foro, citando con aprobación el caso de National Railroad Passenger Corporation v. Boston and Maine Corporation, 850 F. 2d. 756, (D.C., Cir. 1988), expresó que un tribunal puede indagar sobre la intención que tuvieron las partes al contratar para determinar cuáles son las controversias que las partes pactaron arbitrar.
En el caso de Sonic Knitting Industries v. I.L.G.W.U., 106 D.P.R. 557 (1977), el Tribunal Supremo expresó que, en ausencia de lenguaje claramente restrictivo, la tendencia actual en el campo de derecho laboral era conceder mayor latitud a los árbitros en la confección de remedios en sus laudos.
m
Apliquemos el derecho antes expuesto a la situación particular que presenta el caso de autos.
En la petición sobre entredicho e injunction preliminar, caso núm. JPE-93-0114, el Dr. Mendoza alega que se ha visto impedido de llevar a cabo las funciones delineadas en el contrato de servicios profesionales debido a la destitución sufrida y que tal actuación del Hospital constituía un incumplimiento del contrato. Señala, además, que "conforme a lo pactado entre las partes, la destitución del demandante de su posición de Director del Departamento de Patología debe ser sometida al arbitraje por cuanto está comprendida dentro de la obligación de arbitrar de la cláusula 16 del Contrato de Servicios Profesionales".
En el caso sobre sentencia declaratoria y daños y perjuicios, caso núm. JAC-93-0273, el Hospital solicita que se declare que el Hospital puede resolver el referido contrato debido al incumplimiento del mismo incurrido por el Dr. Mendoza. Reclama, además, una compensación por los daños sufridos como consecuencia del referido incumplimiento. En dicha demanda el Hospital le imputa al Dr. Mendoza haber incurrido en varias violaciones contractuales, entre las cuales se destacan las siguientes: (a) que el Dr. Mendoza renunció voluntariamente a su cargo; (b) que el Dr. Mendoza abogó y promovió la renuncia de varios miembros del Comité Ejecutivo del Hospital exponiéndolo a perder su acreditación; (c) que el Dr. Mendoza mantiene directa e indirectamente relaciones profesionales con otros hospitales en el área sur; (d) que a base de las representaciones hechas por el Dr. Mendoza al Hospital respecto a la necesidad de mayor espacio para ubicar unos laboratorios, el Hospital le transfirió a éste temporeramente el certificado de necesidad y conveniencia del Hospital para operar el laboratorio y el Dr. Mendoza ha transferido dicho certificado sin el consentimiento del Hospital; (e) que el Dr. Mendoza ha hecho manifestaciones públicas contrarias a los mejores intereses del Hospital.
Nos corresponde determinar si las controversias planteadas en ambos recursos están sujetas a la cláusula de arbitraje. Tengamos presente que la determinación sobre la arbitrabilidad de una *816 controversia en particular es tarea judicial. World Films v. Paramount Pictures, supra.
El contrato que rige la controversia ante nos es uno de servicios profesionales. Ambas partes en sus respectivos pleitos alegan, en síntesis, violaciones a dicho contrato. El Dr. Mendoza señala que fue destituido de sus cargos y el Hospital señala que éste renunció voluntariamente a su puesto. Estos planteamientos constituyen la médula de las reclamaciones instadas por ambas partes.
El contrato de servicios profesionales otorgado por las partes provee que el Dr. Mendoza desempeñaría dos tipos de funciones en el Hospital: profesionales y administrativas. Ambos tipos de funciones están comprendidas bajo la categoría de servicios profesionales. Coincidimos con la conclusión que a estos efectos hizo el Hon. Miguel Montalvo, en la resolución emitida el 25 de octubre de 1993.
La cláusula dieciséis (16) del contrato es clara al exponer que en la eventualidad que surja alguna disputa sobre asuntos profesionales las partes se someterán al procedimiento de arbitraje para dilucidar la misma.
Esta cláusula de arbitraje es lo suficientemente amplia como para concluir que el árbitro tiene autoridad legal para adjudicar todo tipo de controversia legal que surja en relación con el contrato de servicios profesionales. Véase, World Films v. Paramount, supra. Ciertamente, en el caso de autos es al árbitro a quien le corresponde dilucidar la disputa relacionada esencialmente con la renuncia voluntaria o la destitución del Dr. Mendoza del puesto que ocupaba en el Hospital, pues dicha disputa es una sobre los "asuntos profesionales" a que se refiere el contrato de servicios profesionales otorgado por las partes.
En adición, en este caso no puede establecerse con absoluta certeza que la cláusula de arbitraje no es susceptible de ser interpretada de manera tal que cubra los reclamos expuestos por ambas partes en su respectivos pleitos, los cuales giran en torno a violaciones del contrato. Véase, World Films v. Paramount, supra, a la pág. 362, citando a AT & T Technologies v. Communications Workers, 475 U.S. 643, 650 (1986). En otras palabras, no existe indicio alguno de que las partes tuvieron la intención de limitar los asuntos que serían sometidos al procedimiento de arbitraje. De así haberlo querido, las partes hubiesen insertado una disposición en la cual se excluyeran ciertos asuntos del procedimiento de arbitraje.
Sabido es que cuando los términos de un contrato, sus condiciones y exclusiones son claros y específicos y no dan margen a ambigüedades, así deben aplicarse. Artículo 1233 del Código Civil, 31 LPRA see. 3471. Unisys v. Ramallo Brothers, 128 D.P.R. 842 (1991).
Las controversias que plantean los casos JPE-93-0114 y JAC-93-0273 están inextricablemente relacionadas entre sí. Ambas se refieren al incumplimiento, ya sea por el Dr. Mendoza, o por el Hospital, del contrato de servicios profesionales otorgado por las partes el 1 de agosto de 1987. Ambas partes reclaman un remedio por violaciones al referido contrato. Dichos asuntos están obviamente comprendidos dentro del ámbito provisto en la cláusula (16) y, por tanto, su adjudicación le corresponde a un árbitro.
No pasemos por alto que existe una fuerte política pública en favor del arbitraje y que toda duda respecto a la existencia o no de dicho procedimiento debe resolverse a su favor. Universidad Católica de Puerto Rico v. Triangle Engineering Corp., supra; World Films v. Paramount Pictures, supra. Por tanto, concluimos que el tribunal a quo actuó correctamente al determinar que las controversias en ambos casos deben ser dilucidadas conforme a los. términos de la.cláusula de arbitraje.
El peticionario, Dr. Mendoza, aduce, además, que erró el tribunal recurrido al delimitar el acuerdo de sumisión. El propio peticionario en su "Moción de Desacato y Solicitud de Orden" le solicitó al tribunal que confeccionara el acuerdo de sumisión. En apoyo de su contención de que el tribunal tenía facultad para redactar el acuerdo de sumisión, el peticionario citó los casos de Commonwealth Oil Refining Company v. Unión Independiente de la Industria de Petroquímicas de Puerto Rico, 443 F. Supp. 586 (1977), y Socony Vacuum Tanker Men's Association v. Socony Mobil Oil Co., 369 F.2d. 480, 482 (1966), los cuales, a su vez, fueron citados por el tribunal a quo en la resolución *817 recurrida. 
Reconocemos la facultad de los árbiros de delimitar las controversias que se le someterán en caso de que las partes no logren un acuerdo de sumisión. No obstante, las circunstancias muy particulares que presenta el caso de autos ameritan que sea el tribunal quien realice dicha función. En el caso de autos a las partes no les fue posible lograr un acuerdo de sumisión, han tenido serias dificultades para designar a un árbitro, y han transcurrido más de cuatro (4) años desde que las partes presentaron sus respectivos pleitos. En adición, el único árbitro que ha aceptado la encomienda renunció a su designación, precisamente, por la imposibilidad de las partes en lograr un acuerdo de sumisión. El tribunal a quo delimitó la controversia en aras de persuadir al árbitro para que acepte la tarea. En tales circunstancias, entendemos que actuó correctamente el tribunal recurrido al delimitar el ámbito de la sumisión que el árbitro que acepte la encomienda vendrá obligado a acatar.
Por último, la determinación de otorgarle al árbitro la facultad de conceder daños es cónsona con la tendencia prevaleciente en el campo del derecho laboral a los efectos de expandir las funciones del árbitro en la confección de remedios apropiados en sus laudos. Véase, Sonic Knitting Industries v. I.L.G.W.U., supra.

TV

Por los fundamentos anteriormente expuestos, no expedimos el auto solicitado y remitimos el caso al Tribunal de Primera Instancia, Sala Superior de Ponce, para que se reanude el procedimiento de arbitraje contractualmente pactado conforme a Resolución recurrida.
Así lo pronunció y lo manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 33
1. Debemos aclarar que esta postura asumida por el Hospital, en cuanto a las controversias que serían objeto del arbitraje, es totalmente opuesta a la que presentara el Hospital en respuesta a la petición de entredicho provisional e injunction presentada por el Dr. Mendoza en junio de 1993. De hecho, la negativa del Hospital a someter la controversia a arbitraje fue la que provocó que se dictara la resolución del 25 de octubre de 1993. No es hasta el 1 de marzo de 1997, casi cuatro años más tarde, que el Hospital en su "Moción Sobre el Arbitraje Pendiente" sostiene, por primera vez, que las controversias contenidas en el caso Núm. JAC-93-0273 también estaban sujetas a la cláusula de arbitraje del contrato otorgado por las partes.
Reprochamos la divergencia de criterios que ha presentado el Hospital a lo largo de la tramitación de ambos pleitos, situación que ha provocado, en gran medida, la paralización de los mismos.
2. "En la eventualidad de que surjan disputas sobre asuntos profesionales, el HOSPITAL y el PATOLOGO acuerdan someterse a un procedimiento de arbitraje por personas o por un comité especialmente designado y acordado mutuamente por las partes sujetas al presente acuerdo." (Traducción y énfasis nuestro.)
3. La cláusula 14 del contrato dispone que:

"14. OUTSIDE MEDICAL PRACTICE

The PATHOLOGIST agrees that while this contract or any of its extensions are in force, he shall engage principally as a geographical full time physician at DAMAS HOSPITAL facilities, except as authorized in writing by the hospital.

The PATHOLOGIST will at all times disclose any interest that he may have in other facilities that may or may not compete with DAMAS HOSPITAL...".

4. En Socony Vacuum Tanker Men's Association v. Socony Mobil Oil Co., supra, el Tribunal de Apelaciones para el Segundo Circuito resolvió, en un caso donde las partes no pudieron someter un acuerdo de sumisión, pues cada parte tenía una proposición diferente, resolvió que el tribunal tenía la facultad de delimitar la controversia que se sometería al árbitro. En *818 este caso, la cláusula relativa al arbitraje contenía una disposición específica que requería que las partes sometieran un acuerdo de sumisión.
Sin embargo, en Commonwealth Oil Refining Company v. Unión Independiente de la Industria de Petroquímicas de Puerto Rico, supra, la Corte Federal de Distrito de Puerto Rico, resolvió en un caso donde no se requería específicamente el acuerdo de sumisión como un pre-requisito para el arbitraje, que la limitación del acuerdo de sumisión era una cuestión procesal que le correspondía al árbitro resolver y no a la corte.
El caso de autos presenta una situación similar a la planteada en el caso de Commonwealth Oil Refining Company v. Unión Independiente de la Industria de Petroquímicas de Puerto Rico, supra, toda vez que no existe disposición alguna que establezca que se requiere un acuerdo de sumisión como pre-requisito al arbitraje.