# 99 DTA 110

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**

UNION INDEPENDIENTE DE EMPLEADOS TELEFONICOS
Querellante-Recurrido

v.

PUERTO RICO TELEPHONE COMPANY
Querellado-Peticionario

Núm. KLCE-98-01021

RECEIVED
SEP 28 1999
SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

San Juan, Puerto Rico, a 18 de marzo de 1999

Panel integrado por su Presidenta, Jueza Fiol Matta,
el Juez Gierbolini y la Juez Rodríguez de Oronoz

Fiol Matta, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Se solicita la revisión de una sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan, que mantiene en vigor el laudo de arbitraje emitido por un árbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos. Dicho laudo resuelve que el despido del Sr. Esteban Rodríguez Gumá no procedía porque la peticionaria, Puerto Rico Telephone Company, no cumplió con las exigencias del debido proceso de ley al separar al querellante de su empleo por razón de un diagnóstico de incapacidad mental. En consecuencia, la árbitro ordenó a la peticionaria reponer al señor Rodríguez Gumá en su puesto de Instalador y Reparador de Cuadros Telefónicos y pagarle los salarios dejados de devengar desde la fecha de su cesantía, el 19 de enero de 1996, hasta el momento de su reposición.

Examinados los autos del caso y el derecho aplicable, resolvemos confirmar la sentencia recurrida.

### I

El querellante, Esteban Rodríguez Gumá, se desempeñaba como empleado unionado de la Puerto Rico Telephone Company (en adelante, PRTC) en el puesto de Instalador y Reparador de Cuadros Telefónicos, un puesto de carrera. En el 1993, recibió tratamiento del Fondo del Seguro del Estado (en adelante, FSE) por una condición emocional que le fue relacionada con el empleo. Luego del tratamiento, el FSE le dio de alta y el señor Rodríguez Gumá continuó trabajando.

El 23 de noviembre de 1994, el señor Rodríguez Gumá acudió a la Oficina del Procurador de las Personas con Impedimentos (en adelante, OPPI) para formular una querella por alegado discrimen en su contra de parte de la PRTC debido a su condición emocional. El representante de la OPPI recomendó a la PRTC que el empleado fuese referido a un psiquiatra que determinara si la condición emocional le impedía desempeñar las funciones de su puesto y si era necesario un acomodo razonable.

A tenor con la recomendación de la OPPI, el 28 de febrero de 1995, el Dr. Andrés López Cumpiano, psiquiatra, evaluó al señor Rodríguez Gumá y le diagnosticó un Desorden Bipolar en Fase Mánica. Concluyó que el empleado no estaba capacitado para trabajar y que necesitaba tratamiento. La PRTC informó a la OPPI los resultados de la evaluación y su determinación de brindarle al empleado los beneficios de incapacidad prolongada a partir del 20 de marzo de 1995 para que luego éste se acogiera al beneficio de pensión por incapacidad. El 17 de marzo de 1995, el supervisor del señor Rodríguez Gumá le notificó que según el diagnóstico realizado por el Dr. López Cumpiano, no estaba capacitado para trabajar, por lo que comenzaría a agotar los beneficios por incapacidad. El 19 de enero de 1996, el Dr. López Cumpiano re-evaluó el caso y reiteró su recomendación.

Sin embargo, para ese entonces, la Administración del Seguro Social (en adelante, ASS) ya había denegado la reclamación del señor Rodríguez Gumá de beneficios por incapacidad. El 10 de noviembre de 1995, la ASS determinó que la condición mental del señor Rodríguez Gumá no le impedía trabajar. Para ello, tomó en consideración los informes del Hospital San Juan Capestrano (tratamiento de 18 de septiembre al 3 de noviembre de 1995); del FSE (tratamiento del 7 de enero de 1994 al 20 de abril de 1995); del Dr. Gerardo Tejedor Pascual (del 27 de julio de 1995); y del Dr. López Cumpiano (de 28 de febrero de 1995), así como la edad, educación, adiestramiento y experiencia de trabajo del señor Rodríguez Gumá.

El 25 de enero de 1996, la PRTC notificó al señor Rodríguez Gumá que a partir del 2 de enero de ese año había agotado los beneficios establecidos por el Convenio Colectivo para enfermedad prolongada y que tenía derecho a extender el beneficio de retención de empleo por doce semanas, beneficio que tenía que solicitar por escrito. Unos días después, mediante carta de 7 de febrero de 1996, se le citó a una reunión con su supervisor, a celebrarse el 15 de febrero de 1996. Se le informó que el propósito de la reunión era *"discutir asuntos relacionados con su trabajo en la PRTC"*.

La reunión se celebró en la fecha señalada. Durante la misma, se le informó al señor Rodríguez Gumá que se trataba de una vista pre-separación, ya que él había agotado los beneficios por enfermedad prolongada. Según la Minuta levantada, el señor Rodríguez Gumá manifestó su preocupación en torno a la necesidad de plan médico para continuar su tratamiento. Terminada la reunión, se le requirió que entregara las herramientas, la tarjeta de identificación y el *"beeper"* que tenía en su poder. Al día siguiente, se le notificó mediante carta que la PRTC prescindía de sus servicios, efectivo el 19 de enero de 1996, según se le había informado en la reunión.

El 15 de marzo de 1996, el Dr. Enrique M. Vasallo examinó al señor Rodríguez Gumá, por instrucciones de la Unidad de Determinaciones por Incapacidad del Seguro Social. Este psiquiatra evaluó el estado mental del señor Rodríguez Gumá, su habilidad para trabajar y ganarse su propio sustento, su capacidad para entender, recordar y concentrarse, así como su persistencia, interacción social y adaptación. El Dr. Vasallo encontró que el señor Rodríguez Gumá estaba alerta, entendía y atendía bien, no tenía problemas con la memoria y era capaz de adaptarse. Opinó que el señor Rodríguez Gumá podía ganarse su propio sustento, administrar su dinero sin asistencia o supervisión y ser rehabilitado en su área de interés, aunque presentaba un problema de dependencia de alcohol.

Por otro lado, a solicitud de la División de Seguro por Desempleo del Departamento del Trabajo, el señor Rodríguez Gumá también fue evaluado por el Dr. José Gómez Alba. Este médico certificó que el señor Rodríguez Gumá podía trabajar una jornada completa de ocho horas y que presentaba un diagnóstico *de "Desorden Esquizo Afectivo en Remisión, Abuso de Alcohol, Exacerbada por el Trabajo"*. La fecha de tal certificación es 6 de julio de 1996.

El 9 de abril de 1996, la Unión intervino, presentando una querella ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos, en la que alegó que no procedía el despido del señor Rodríguez Gumá y el asunto fue sometido a arbitraje. En la vista de arbitraje, las partes acordaron que el empleado se sometería a una evaluación psiquiátrica por un médico de su preferencia. Acordaron, además, que de no coincidir los informes siquiátricos de las partes, la árbitro contaría *"con el beneficio de ambos informes"*. El señor Rodríguez Gumá escogió al Dr. José Gómez Alba, quien rindió su informe el 19 de septiembre de 1996. Este médico diagnosticó *"n.o.s. en remisión y abuso de alcohol en remisión"* y opinó que el señor Rodríguez Gumá está motivado a reintegrarse a su función laboral, que no utiliza fármacos y que puede realizar una función productiva.

La árbitro delimitó que el asunto remitido a su consideración era *"[d]eterminar, conforme a derecho, si la cesantía del señor Rodríguez Gumá, efectiva el 19 de enero de 1996, procedía o no"*. Su determinación fue que la cesantía del señor Rodríguez Gumá no procedía, ya que en el proceso de separarlo de su empleo, la compañía debió haberle permitido confrontar la prueba del patrono sobre su condición mental y presentar su propia prueba médica. Ello en atención a que el fundamento del despido era un diagnóstico de incapacidad mental, que dependía de opiniones médicas y no de exámenes médicos objetivos. La árbitro concluyó como sigue: *"Conforme a derecho, la cesantía del Sr. Esteban Rodríguez Gumá no procede, ya que la PRTC no cumplió con las exigencias del debido proceso de ley en el proceso de separarlo de su empleo por razón de un diagnóstico de incapacidad mental"*.

Por entender que el laudo no fue emitido conforme a derecho, la PRTC solicitó su revisión ante el Tribunal de Primera Instancia. La parte querellante-recurrida se opuso a la revisión judicial y el 18 de agosto de 1998, el tribunal de instancia denegó el recurso.

Inconforme con esta determinación, la PRTC plantea que el tribunal de instancia erró al resolver que lo relativo a la vista pre-separación no fue fundamental en la determinación final de la árbitro, al determinar que los actos anteriores de la Compañía le impedían levantar planteamientos relacionados con la vista pre-separación y al determinar que era inmeritorio su reclamo de que se violó su derecho al debido proceso de ley.

## II

La PRTC alega que la árbitro excedió la autoridad que le fue reconocida por las partes y enmendó el convenio colectivo al requerir una vista pre-separación. Entiende que el convenio colectivo no exige ese procedimiento y que la Unión tampoco lo exigió durante el proceso de negociación. Sin embargo, según señaló el tribunal de instancia, la árbitro realmente no concluyó que era necesario celebrar una vista pre-separación, sino brindar al empleado la oportunidad *"de presentar su prueba médica y rebatir la de la compañía antes de tomar la decisión"*.

Concluimos que en el contexto de la incapacidad alegada como fundamento para el despido, era necesario que el patrono demostrara que había considerado no sólo las opiniones de los psiquiatras escogidos por la compañía, sino las de los médicos consultados por el empleado. Sólo así podría sostenerse una determinación de justa causa-para el despido por incapacidad mental: *"Este es precisamente el tipo de decisión que requiere unas conclusiones de hecho sobre las condiciones físicas y mentales de una persona que no deben ser formuladas sin que la parte afectada tenga una oportunidad de exponer su posición y rebatir cualquier prueba en su contra."* Véase, *Carrón Lamoutte v. Compañía de Turismo del E.L.A.*, **92 J.T.S. 27**, Op. de 2 de marzo de 1992. Todo ello estaba dentro de los parámetros de la sumisión que, según hemos indicado, le requería a la árbitro determinar si la cesantía del señor Rodríguez Gumá era procedente en derecho. La árbitro determinó que no lo era, no porque el derecho requiriese una vista pre-separación, sino porque la compañía no cumplió con *"lo importante en estos casos"*, que es *"probar ante el árbitro que el patrono le brindó la oportunidad al empleado de presentar su prueba médica y rebatir la de la compañía antes de tomar la decisión en su contra".* (Laudo, pág. 12). Así lo reconoció el juzgador de instancia, quien explicó:

*"De un detenido examen del laudo objeto del recurso, surge que el fundamento medular por el cual la distinguida árbitro determina que el despido del empleado no procede, radica en lo reñido con el debido proceso de ley que resulta ser el despido de un empleado, por una condición mental basada en la opinión médica de un sólo psiquiatra. Vemos, pues, que todo lo relativo a la vista pre-separación no fue fundamental en la determinación final de la árbitro".* (Sentencia, pág. 9)

Es evidente que lo que el laudo resuelve es que la sola prueba médica del psiquiatra del patrono no era suficiente en derecho para justificar el despido. Lo relativo a la celebración de una vista pre-separación no fue determinante.

Es norma trillada que los laudos de arbitraje en el campo laboral merecen de los tribunales una gran deferencia, salvo cuando se demuestra fraude, conducta impropia del árbitro, falta del debido proceso de ley, falta de jurisdicción del árbitro, omisión de resolver todas las cuestiones en disputa o violación a la política pública. *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 D.P.R. 318 (1988)*; J.R.T. v. Corp. Crédito Agrícola*, 124 D.P.R. 846 (1989). El Tribunal Supremo ha resuelto que no corresponde a los tribunales inquirir sobre el proceso deliberativo, mental y decisional del árbitro. Aun cuando se requiera que el laudo sea conforme a derecho, los tribunales no deben inclinarse fácilmente a invalidarlos a menos que sea evidente que no fueron

resueltos de esa forma. No es suficiente para ello una discrepancia de criterio con lo expuesto en el laudo. *Febus v. Marpe Const. Corp.*, **94 J.T.S. 19**, Op. de 25 de febrero de 1994; *Rivera v. Samaritano & Co. Inc.,* 108 D.P.R. 604, 609 (1979).

La árbitro en este caso resolvió que la compania no estuvo justificada en despedir al peticionario a base de un diagnóstico de incapacidad mental que dependía de la opinión médica de un sólo psiquiatra, sobre todo cuando tal opinión está encontrada con las opiniones de otros psiquiatras que evaluaron al señor Rodríguez Gumá, cuyas opiniones constan en el expediente, incluyendo el testimonio pericial del Dr. José Gómez Alba, perito de la Unión durante el proceso de arbitraje. La PRTC no nos ha convencido de que tal determinación fuese arbitraria o irrazonable.

Por los fundamentos anteriormente expuestos, se expide el auto y se confirma la sentencia recurrida.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General