# 2009 DTA 122

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**

ASOCIACIÓN DE EMPLEADOS DEL E.L.A. DE P.R.
Recurrida

v.

UNIÓN LOCAL 1850 (UAW)
Recurrente

Núm. KLCE-09-01006

San Juan, Puerto Rico, a 2 de septiembre de 2009

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Salas Soler y la Juez Colom García

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La causa que consideramos trata sobre la validez de un laudo de arbitraje.

La Unión Local 1850, UAW (Unión o Recurrente) solicita revisemos y dejemos sin efecto la Sentencia emitida el día 10 y notificada el 16 de junio de 2009 por el Tribunal de Primera Instancia, Sala de San Juan (T. P.I. o Instancia) mediante la cual Instancia mantiene en todo su vigor y efecto el Laudo de Arbitraje A-05-1565.

Inconforme, la Recurrente señala que el T.P.I. erró al concurrir con un laudo nulo, toda vez que el mismo es contrario a derecho, violentó la política pública y fue emitido mediando conducta impropia de la Árbitro.

La Asociación de Empleados del Estado Libre Asociado de Puerto Rico (AEELA o Recurrida) compareció en oposición el 12 de agosto del año en curso. Sometida la causa, procedemos a resolver confirmando la sentencia emitida por instancia. Exponemos.

### I

Luego de estudios correspondientes, la Junta de Directores de AEELA determinó eliminar su Sección de Archivo y Microfilmación y subcontratar dichos servicios. En consecuencia, el 5 de noviembre de 2004 cesanteó (9) empelados de la referida sección proveyéndole a éstos lo establecido en el Convenio Colectivo entre AEELA y la Unión en su Artículo 36, Subcontratación:

"La Asociación se compromete a conceder un mes natural con sueldo por cada año de servicio que haya prestado todo empelado que vaya a quedar cesante **por razón de subcontratación de trabajo** que realizan los

miembros de la unidad contratante o por la mecanización de los mismos." Énfasis nuestro.

Agotado el procedimiento de quejas y agravios correspondiente, el 11 de enero de 2005, la unión presentó una querella en el Negociado de Conciliación y Arbitraje, en la cual alegó que el despido de los querellantes fue injustificado y se realizó en violación al Convenio Colectivo, solicitando la reposición en el empleo de los cesanteados, así como el pago de sus haberes. La causa de Arbitraje fue asignada a la Árbitro Maité A. Alcántara Mañaná quien celebró varias vistas durante el año 2007, quedando el caso sometido para adjudicación el 16 de abril de 2008.

La Árbitro emitió su Laudo el 7 de noviembre de 2008 determinando que la AEELA no violó el Convenio Colectivo al subcontratar las operaciones del Departamento de Sistemas de Información, en la Sección de Archivo y Microfilmación, adscrita al Departamento de Servicios Generales y, por consiguiente, la cesantía de los (9) empleados estuvo justificada procediendo a desestimar la querella.

La Unión alegó ante el T.P.I., argumentó que reproduce ante este Foro, que los despidos de los Querellantes fueron injustificados por disponer el Convenio Colectivo que éstos podían ejercer su derecho a "bumping", o sea, que les correspondía desplazar a los trabajadores con menor antigüedad. La Unión aduce que el AEELA debió activar el proceso de desplazo de personal correspondiente por tratarse de reducción permanente de personal.

Por su parte, AEELA señala que las cesantías de los Querellantes fueron el resultado directo de la reestructuración y cambios necesarios en su Departamento de Sistemas.

En el Laudo emitido se señala, sin que se refute, que aunque el AEELA no aceptó desplazar a empleados de menor antigüedad, sí presentó la alternativa de reubicación a los Querellantes en plazas que en ese momento, se encontraban disponibles, alternativa que fue rechazada por la Unión, ya que dicho ofrecimiento representaba que los cesanteados devengarían el sueldo básico de la clasificación asignada.

La posición medular de la AEELA descansa en el Artículo 11, Suspensiones y Reemplazos, Sección Segunda del Convenio Colectiva que dispone:

"Cuando la Asociación tuviere que reducir permanentemente personal en cualquiera de sus departamentos, lo notificará por escrito a la Unión. A petición escrita de la Unión, que deberá someterse en o antes de cinco (5) días laborables desde la fecha de recibo de la notificación, la Asociación procederá con la reducción permanente de personal en base a cesantear preferentemente a los de menor antigüedad dentro del departamento, pero los empleados cesanteados podrán desplazarse a cualquier otra posición. Es decir, **dentro del departamento concernido**, se retendrá con preferencia, siempre que cualifique, al empleado de mayor antigüedad, procediéndose con el desplazamiento de personal ("bumping") dentro del departamento, y si no hay posición disponible para el empleado afectado dentro del departamento, podrá desplazase a otras posiciones a base de su antigüedad general". Énfasis nuestro.

Al ser sustituido el Departamento de Sistemas por subcontratación del trabajo, cesan las oportunidades de los empleados desplazados de cualificar para sustituir otros de menor antigüedad.

Como bien expone la Árbitro en su Laudo y el T.P.I. acoge en su Sentencia, la AEELA actuó correctamente al aplicar el Artículo 36, *supra*, sobre subcontratación, y cesantear a los Querellantes, en lugar de activar el sistema de desplazamiento dispuesto en el Artículo 11 del Convenio Colectivo antes citado.

El Convenio dispone claramente las circunstancias en las cuales AEELA deberá activar el mecanismo sobre desplazamiento. El mismo se activará en el caso que se tuviere que reducir permanentemente personal en

cualquiera de sus departamentos, por lo que podemos concluir que en los casos en que se elimine personal por cualquier otra razón que no constituya subcontratación y de otro modo, que el área o sección afectada sobreviva la reducción de personal originada, corresponderá la aplicación del mecanismo sobre desplazamiento. En los casos en que la reducción de personal sea consecuencia directa, como en esta causa, de la eliminación de un área de trabajo por razón de subcontratación de tareas, corresponderá la aplicación del Artículo 36 citado.

## II

Sobre el ámbito que rige la revisión de laudos de arbitraje, exponemos y compendiamos lo expresado por nuestro Tribunal Supremo en el caso *J.R.T. v. Corp. Crédito Agrícola*, 124 D.P.R. 846, 849-852 (1989), y por el hermano Panel III, a manera de ejercicio judicial persuasivo en el Caso KLCE-07-00651 de 31 de agosto de 2007.

El arbitraje es la alternativa más formal que existe a la adjudicación y litigio judicial. En este proceso, las partes en disputa someten y presentan su caso ante un tercero neutral que está investido con la facultad de rendir una decisión. D. Fernández Quiñones, *El Arbitraje Obrero-Patronal*, 1era Edición, Ediciones Forum, 2000, págs. 21-23. Un laudo es aquella resolución que dicta un árbitro, al ajustar controversias entre las partes. El Tribunal Supremo ha establecido que el arbitraje constituye el medio más adecuado para la resolución de los conflictos que surgen de la aplicación e interpretación de los convenios colectivos por ser un trámite rápido, cómodo, menos costoso y técnico. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 D.P.R. 62, 68 (1987).

La autoridad del árbitro para entender en una controversia queda definida por la cláusula de arbitraje convenida, así como por el acuerdo de sumisión sometido por las partes y aquella autoridad que pueda ser conferida para confeccionar el remedio que corresponda. Se constituye, pues, dicho acuerdo, en definitorio de los asuntos a ser decididos y es lo que controla, junto con las disposiciones aplicables del convenio colectivo, el ámbito de autoridad del árbitro o panel de arbitraje seleccionado por las partes con tal finalidad. *J.R.T. v. Corp. Crédito Agrícola, supra.*

El Tribunal Supremo ha establecido las pautas sobre la doctrina de la revisión judicial en los laudos de arbitraje. Ha expresado que las normas pautadas en torno a la revisión judicial de laudos de arbitraje se han caracterizado por una marcada deferencia hacia éstos. En *J.R.T. v. Corp. Crédito Agrícola, supra*, a la pág. 849, se estableció lo siguiente sobre el alcance de la revisión judicial de un laudo de arbitraje:

"La trayectoria de nuestras decisiones en materia de arbitraje obrero-patronal se caracteriza por una marcada deferencia hacia los laudos de arbitraje. En consonancia con este principio, hemos reiterado que un laudo fundamentado en la sumisión voluntaria de las partes está sujeto a revisión judicial sólo si las partes convienen en que la controversia sometida al árbitro sea resuelta conforme a derecho. En ausencia de disposición expresa a esos efectos, un laudo sólo puede ser impugnado si se demuestra la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión en resolver todas las cuestiones en controversia que se sometieron o que el mismo resulte contrario a la política pública."

A tenor de lo anterior, la intervención judicial en la revisión de los laudos de arbitraje se justifica cuando las partes sometan el asunto al árbitro para que sea resuelto conforme a derecho. Ésta es la excepción de la política judicial de auto restricción para la revisión de laudos de arbitraje. Este pacto deberá surgir del convenio colectivo o del acuerdo de sumisión. Ello implica que ambas partes pueden recurrir ante el foro judicial para impugnarlo y revisar su corrección y validez jurídica. *J.R.T. v. Hato Rey Psychiatric Hospital, supra*, pág. 68. Hasta entonces, el tribunal quedará facultado para revocar un laudo si el árbitro erró en la aplicación del derecho. *U.I.L. de Ponce v. Destilería Serrallés, Inc.*, 116 D.P.R. 348 (1985), pág. 353.

Cuando las partes expresen en el convenio colectivo o en el acuerdo de sumisión que el laudo deberá ser emitido conforme a derecho, "los árbitros deben seguir las reglas de derecho y rendir sus laudos a tenor con las

-doctrinas legales prevalecientes. Si el convenio de arbitraje nada dice en cuanto a esto, de conformidad con la Ley Común y bajo la mayoría de las leyes de arbitraje, los árbitros pueden declarar cuál es la ley, y ningún laudo será anulado a causa de sus errores de derecho." *Junta de Relaciones del Trabajo v. N.Y. & Puerto Rico Steamship Co.*, 69 D.P.R. 782, 802 (1949).

En lo que respecta a la revisión judicial, el Tribunal Supremo ha resuelto que los laudos de arbitraje son revisables ante los tribunales de manera análoga al procedimiento dispuesto para la revisión de agencias administrativas, las cuales gozan de gran deferencia por parte de los tribunales. De acuerdo con este esquema, la función del tribunal no es emitir un *juicio de novo* sobre los méritos de la controversia, sino la de pasar juicio sobre la corrección de lo decidido por el árbitro, confiriendo al laudo una presunción de corrección similar a la que se le atribuye a cualquier sentencia o resolución administrativa. *U. Ind. Emp. A.E.P. v. A.E.P.*, 146 D.P.R. 611, 630-631 (1998).

## III

Los hechos de la presente causa son claros y precisos según se exponen en la sentencia recurrida.

Su consideración no le ofrece cabida al señalamiento de error invocado por la Unión. El Laudo cuestionado es uno válido, bien estructurado y en forma alguna contrario a derecho. Contrario a lo alegado, el Laudo no violenta política pública alguna y la Árbitra no incurrió en absoluto en conducta impropia.

Por lo expuesto, se deniega la expedición del recurso de *certiorari* presentado por la parte Recurrente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria Tribunal de Apelaciones