# 2006 DTA 4

### TRIBUNAL DE CIRCUITO DE APELACIONES
### REGIÓN JUDICIAL DE SAN JUAN
### PANEL III

CORPORACIÓN DE LA ORQUESTA SINFÓNICA DE PUERTO RICO
Recurrente

v.

AMERICAN FEDERATION OF MUSICIANS OF UNITED STATES AND CANADA (AFL—CIO)
Recurrida

Núm. KLCE-2004-01526

San Juan, Puerto Rico, a 18 de octubre de 2005

Panel integrado por su Presidente, el Juez Ortiz Carrión, y
los Jueces Negroni Cintrón y Rivera Román

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Por entender que erró el Tribunal de Primera Instancia en la adjudicación del caso al no considerar los hechos relacionados a una alegada conducta impropia del unionado que puede constituir hostigamiento sexual, resolvemos revocar la determinación.

### I

El señor Pedro Emmanueli se desempeñaba como músico regular permanente de la Corporación de la Orquesta Sinfónica de Puerto Rico, (en adelante Orquesta Sinfónica) desde el 1985. La señorita Ana María Hernández también ocupaba un puesto de músico en la Orquesta Sinfónica. Ambos músicos son unionados y pertenecen a la unidad apropiada que constituye la American Federation of Musicians, Local 555, recurrida en el presente caso.

La Srta. Hernández se querelló sobre el comportamiento del señor Emmanuelli mediante una carta dirigida a la señora Aida Gisela Asencio, Directora General de la Corporación. Se alegó en la comunicación, fechada 10 de noviembre de 2001, que el señor Emmanuelli la trató de forma irrespetuosa al lanzarle gritos y recriminarle su manera de tocar el instrumento del violín. El texto de la comunicación remitida por la señorita Hernández hace referencia a que el señor Emmanuelli ha desarrollado contra ella un comportamiento de "*hostigamiento y alteración a la paz*" y relata que en el ensayo de ese día le gritó y le recriminó la forma de tocar, hecho ello en un tono alto, alterado y agresivo. Véase Apéndice del Recurso, a la pág. 29. Además, en la carta se hace referencia a que es la segunda ocasión que ocurre un incidente similar en que el señor Emmanuelli se dirige a ella, durante los ensayos, de una forma incorrecta.

La señora Asencio llevó a cabo una reunión con representantes de la Corporación y la Unión en la cual discutieron el contenido de la querella y el comportamiento del querellado. El señor Emmanuelli dirigió una comunicación a la señorita Hernández mediante la cual se disculpó por el incidente ocurrido, el 28 de noviembre de 2001.

Nuevamente, el 24 de enero de 2002, la señorita Hernández se querelló porque el señor Emmanuelli le cuestionó, le gritó y se le abalanzó encima. La señorita Hernández gritó, solicitó ayuda y tuvo que intervenir otro

músico para controlar la situación. Al momento en que ocurre el incidente, los músicos se encontraban en el local donde se celebran los ensayos y ello ocurrió al concluir el mismo.

Al día siguiente, 25 de enero, la señora Evangelina Colón remitió una comunicación al señor Pedro Emmanuelli mediante la cual le comunicó que iniciaron un procedimiento disciplinario en su contra porque la señorita Ana M. Hernández lo acusó por hostigamiento sexual y por un intento de agresión contra un compañero de la orquesta. Citaron al señor Emmanuelli a una vista informal y lo suspendieron de empleo. De la comunicación se desprende que el asunto fue tramitado luego de una queja iniciada el 10 de noviembre, otra el 24 de noviembre y se relacionan al comportamiento del señor Emmanuelli hacia la señorita Hernández. Expresamente indica la Orquesta Sinfónica que tiene el deber, como patrono, de mantener un ambiente de trabajo seguro y libre de hostigamiento sexual. Apéndice del Recurso, a la pág. 32.

Fue admitida en evidencia durante una audiencia ante la Árbitro una comunicación que suscribe la Lcda. Ana I. Rivera Lassen, representante legal de la señorita Hernández a la Unión, en la cual se queja de que durante los pasados dos años ha estado sometida un patrón de presión y hostigamiento por parte del señor Emmanuelli, que ha habido acercamientos sexuales hechos por él y no deseados y rechazados por ella, que reclama a la Unión que actúe en un procedimiento de querella o cualquier otro similar. Véase Apéndice del Recurso, a la pág. 34.

La Orquesta Sinfónica, luego de celebrar la vista informal, despidió al señor Emmanuelli por las querellas de hostigamiento sexual y conducta impropia mediante carta de 25 de febrero de 2002. La Unión Local 555, en representación del señor Emmanuelli, reclamó la aplicación del convenio colectivo y sometió el caso al Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos (en adelante Negociado). Las partes comparecieron ante un árbitro los días 17 y 18 de diciembre de 2002. La Árbitro informó que las partes no lograron un acuerdo de sumisión y cada uno sometió su propuesta. La Árbitro determinó que la controversia a ser resuelta era:

*"Determinar conforme a Derecho, el Convenio Colectivo, los hechos y la prueba presentada, si el despido del señor Pedro Emmanuelli estuvo o no justificado. De entender que fue injustificado, proveer el remedio adecuado".*

Luego de celebrar la audiencia, la Árbitro determinó que el señor Emmanuelli incurrió en una falta menor enmarcada en los eventos de 10 de noviembre de 2001, que no incurrió en violación en cuanto a los hechos de 24 de noviembre y que no tenía jurisdicción para atender lo relacionado con la queja de hostigamiento sexual por disposición expresa del reglamento del Negociado. Considerando lo anterior, la Árbitro determinó que la acción disciplinaria de despido no estuvo justificada y sustituyó el despido por una carta de amonestación. Ordenó, por tanto, a la Orquesta Sinfónica reponer al señor Emmanuelli con todos los haberes dejados de percibir.

La Orquesta Sinfónica acudió mediante revisión judicial al Tribunal de Primera Instancia (en adelante T.P.I.). Luego de considerar la posición de las partes, el T.P.I. dictó sentencia mediante la cual confirmó el laudo de arbitraje el 19 de octubre de 2004. El razonamiento del T.P.I. establece que las partes acordaron, mediante un convenio colectivo, el procedimiento para revisar las acciones disciplinarias, y en este caso, el Negociado no tenía jurisdicción para atender querellas de hostigamiento sexual. La sentencia del T.P.I. omite toda contestación a la interrogante de ¿qué trámite tiene disponible un patrono que atiende una queja de una empleada que alega ser víctima de hostigamiento sexual por un compañero de trabajo?

Inconforme con la sentencia, la Orquesta Sinfónica presentó un recurso de *certiorari* en el que sostiene que erró el T.P.I. al sostener la legalidad del laudo de arbitraje emitido.

Examinemos varios aspectos de derecho aplicables al caso ante nuestra consideración.

## 1. La Revisión Judicial de los Laudos de Arbitraje

El convenio colectivo es un contrato que tiene fuerza de ley entre el patrono y la unión, siempre que no contravenga la ley, la moral y el orden público. *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, 116 D.P.R. 348, 352 (1985). Cuando los términos de un convenio colectivo son claros y no dejan lugar a duda en cuanto a la intención de las partes, hay que interpretarlos conforme el sentido literal de sus cláusulas. *A.M.A. v. J.R.T.*, 114 D.P.R. 844, 847 (1983). Si las partes del convenio colectivo han acordado utilizar el arbitraje como mecanismo de solución de controversias, se convierte éste en un foro sustituto a los tribunales de justicia y el árbitro, en efecto, representa la sustitución del juez. *López v. Destilería Serrallés*, 90 D.P.R. 245, 256 (1964). Como ha señalado nuestro Tribunal Supremo, las partes que firman un convenio de esta naturaleza *"deben comprender que han sustituido al árbitro por las cortes"*. *U.I.L. de Ponce v. Dest. Serrallés, Inc, supra*, pág. 354. La función del árbitro es interpretar las cláusulas del convenio. *J.R.T. v. National Packing, Co.*, 112 D.P.R. 162, 166 (1982).

La materia de la revisión laboral de los laudos de arbitraje obrero-patronal se caracteriza por una marcada deferencia hacia los mismos. *J.R.T. v. National Packing Co., supra*; *Colón Molinary v. A.A.A.*, 103 D.P.R. 143, 155 (1974). En principio, existen dos tipos de laudos. El primero ocurre cuando las partes acuerdan que las determinaciones del árbitro deben ser *"conforme a derecho"*. *J.R.T. v. Hato Rey Psychiatric Hospital*, 119 D.P. R. 62, 67 (1987); *U.I.L. de Ponce v. Dest. Serrallés, Inc., supra*, págs. 352-353. El Artículo 19 del Convenio Colectivo en el presente caso dispone que los laudos sean conforme a Derecho.

La segunda modalidad ocurre cuando no existe en el convenio colectivo una disposición expresa que aluda a que la controversia sea resuelta *"conforme a derecho"*. En tal caso, el laudo sólo puede ser impugnado si se demuestra la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión en resolver todas las cuestiones en controversia que se sometieron o que el mismo resulte contrario a la política pública. *J.R.T. v. Corp. Crédito Agrícola*, 124 D.P.R. 846, 849 (1989); *J.R.T. v. Junta Adm. Muelle Municipio de Ponce*, 122 D.P.R. 318, 325 (1988); *J.R.T. v. A.E.E.*, 113 D.P.R. 564 (1982).

## 2. Laudos Contrarios a la Política Pública

La noción de política pública está dirigida a mantener el interés público general *"que en determinado momento se considera prevalente por las leyes y precedentes legales que le sustentan"*. Ver Demetrio Fernández Quiñones, *El Arbitraje Obrero-Patronal*, Editorial Forum, Colombia, 2000, pág. 557. Como señalamos anteriormente, un laudo de arbitraje, contrario a la política pública, puede ser impugnado en los tribunales. En *Beauchamp v. Dorado Beach Corp*, 98 D.P.R. 633 (1970), nuestro Tribunal Supremo se expresó en cuanto a este asunto.

Los hechos de *Beauchamp, supra,* son los siguientes. Un árbitro emite un laudo en el cual determinó que un empleado debió haber sido clasificado en un puesto distinto al que ocupaba, y en consecuencia, ordenó el pago de los salarios retroactivos a base de la clasificación correspondiente a su último puesto. Sin embargo, el árbitro no se expresó en cuanto a la penalidad contemplada en la Ley 329 de 1948, 29 L.P.R.A. sec. 282.

La parte afectada presentó una querella ante el entonces Tribunal Superior, quien determinó que el querellante no tenía derecho a reclamar la suma adicional por no haberse planteado esa cuestión ante el árbitro. Revocando al foro de primera instancia, el Tribunal Supremo expresó:

*"Al árbitro no había que someterle la cuestión de si se debía pagar o no la suma adicional porque eso es*

*una consecuencia inevitable —por ordenarlo así la ley— de la decisión del árbitro. Así, por ejemplo, tampoco tenía el árbitro que decidir que al querellante había que pagarle en moneda de curso legal. Ni las partes podían pactar en contra de la disposición de ley que ordena la suma adicional, ni el árbitro podía fallar en forma que la hiciese inoperante, pues los laudos no pueden violar la política pública, Junta Relaciones del Trabajo v. N.Y. & P.R. S/S Co., 69 D.P.R. 782, 800 (1949), y las disposiciones de ley sobre horas y salarios encarnan la política pública del país en estas cuestiones." Beauchamp v. Dorado Beach Corp, supra,* pág. 636.

Conforme a lo decidido en *Beauchamp, supra,* un laudo contrario a disposiciones de ley referentes a horas y salarios, es un laudo que los tribunales vienen obligados a dejar sin efecto. Esto es así, pues nuestra legislación social de horas, salarios y condiciones de trabajo está revestida de gran interés público. Ver Demetrio Fernández Quiñones, *El Arbitraje Obrero-Patronal, supra,* págs. 557-564. Véase además, *J.R.T. v. Vigilantes, Inc.,* 125 D.P.R. 581 (1990); *J.R.T. v. Autoridad de Fuentes Fluviales,* 111 D.P.R. 837 (1982); *J.R.T. v. Junta Adm. Muelle Municipio de Ponce, supra,* pág. 330.

En *J.R.T. v. Vigilantes, Inc., supra,* esc. 1, el Tribunal Supremo expresó, conforme a lo resuelto en *Hurd v. Hodge,* 334 U.S. 24 (1948), que las fuentes de la política pública son "*la Constitución, las leyes (que incluyen los decretos mandatorios) y los precedentes legales en el ámbito del derecho laboral*".

En la jurisdicción federal, los tribunales han tenido la oportunidad de discutir ampliamente lo concerniente a la impugnación de laudos de arbitraje por alegadas violaciones a la política pública. A esos efectos, en *W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757 (1983), el Tribunal Supremo de Estados Unidos estableció el criterio a utilizarse al determinar qué debe considerarse como "*política pública*". Expresó el tribunal que al determinar que ha habido una violación a la política pública, dicha política pública "*must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests*". *W.R. Grace & Co. V. Rubber Workers, supra,* pág. 766, (citas internas omitidas).

## 3. La Ley de Hostigamiento Sexual

La Constitución del Estado Libre Asociado de Puerto Rico, en su Artículo II., Secc. 1, reconoce el principio universal de que todos los seres humanos son iguales ante la ley y la inviolabilidad de su dignidad al prohibir el discrimen por razón de raza, color, sexo, entre otros.

La Ley 100 de 30 de junio de 1959, 29 L.P.R.A. secs. 146-151, recogió dichos conceptos en el ámbito de las relaciones obrero-patronales. La Ley 100, *supra,* prohíbe el discrimen por edad, raza, color sexo, entre otros.

El Tribunal Supremo de Puerto Rico determinó que el hostigamiento sexual constituye una modalidad de discrimen por razón de sexo, prohibida por el amplio espectro de protección que concede la Ley 100, *supra. Rodríguez Meléndez v. Sup. Amigo, Inc.,* 126 D.P.R. 117 (1990).

La Asamblea Legislativa de Puerto Rico aprobó unos años después la Ley de Hostigamiento Sexual, Ley 17 de 22 de abril de 1998, según enmendada, 29 L.P.R.A. sec. 155 *et seq.* La Ley 17, *supra,* declaró como política pública que el hostigamiento sexual en el empleo es una forma de discrimen por razón de sexo y atenta contra la dignidad del ser humano. 29 L.P.R.A. sec. 155. La referida ley impone responsabilidad al patrono, cuando ocurre el hostigamiento sexual en el empleo, por sus actuaciones o las actuaciones de los agentes o supervisores, aunque no sean autorizadas o permitidas por el patrono y aun si no las conocía. 29 L.P.R.A. sec. 155d. El patrono tiene la obligación de mantener el lugar de trabajo libre de hostigamiento sexual e intimidación. 29 L.P.R.A. sec. 155e. La ley le impone al patrono la responsabilidad afirmativa de establecer una clara política contra el hostigamiento sexual. 29 L.P.R.A. sec. 155i. *Delgado Zayas v. Hosp. Int. Med. Avanzada,* 137 D.P.R. 643 (1994).

## III

En el presente caso, el ámbito de la acción disciplinaria se puede dividir en tres aspectos, a saber: los hechos ocurridos los días 10 de noviembre de 2001 y 24 de enero de 2002 y la querella de hostigamiento sexual presentada por la empleada Ana María Hernández a su patrono, la Orquesta Sinfónica.

La Árbitro definió su encomienda como *"determinar conforme a Derecho, el convenio colectivo... si el despido del señor Pedro Emmanuelli estuvo o no justificado... proveer el remedio adecuado."* Debemos recordar que el acuerdo de sumisión, o en su defecto la controversia a resolver determinada por el árbitro a base de la prueba o de los proyectos de sumisión presentados por las partes, delimita la jurisdicción del árbitro respecto a los asuntos sobre los que éste pasará juicio. *J.R.T. v. Corp. Crédito Agrícola, supra.*

La Árbitro consideró probados los incidentes del 10 de noviembre y, de hecho, del expediente se desprende una carta del señor Emmanuelli en la cual pide disculpas a la señorita Hernández por su mal comportamiento.

En cuanto a los hechos del 24 de enero de 2002, la Árbitro subestimó la importancia de lo ocurrido en violación al Reglamento de la Orquesta Sinfónica porque consideró que el incidente no ocurrió durante el ensayo de la Orquesta.

Tal conclusión es incorrecta. Los músicos estaban en la Sala Sanromá, donde se efectúa el ensayo y, justo al concluir, mientras se recogen las pertenencias e instrumentos para abandonar el local, ocurre el incidente. La interpretación de la Árbitro permitiría que un minuto después de concluir el ensayo, estando en el local donde se realizan éstos, mientras se preparan para abandonar el sitio, los músicos podrían incurrir en cualquier conducta contra otro músico o aun, contra el Director, y ello no tendría consecuencias en su empleo porque el Reglamento que rige el comportamiento de los miembros de la orquesta no les aplica.

La disposición reglamentaria del patrono claramente promueve el que se mantenga una relación de respeto y cordialidad entre los músicos y, por la naturaleza de una orquesta musical, es vital lograr un ambiente de trabajo armonioso.

Seguidamente, la Árbitro resolvió no tener jurisdicción sobre la querella de hostigamiento sexual. Cabe preguntarse, ¿cómo puede la Árbitro determinar si el despido fue o no justificado si no atiende un aspecto fundamental del problema? ¿Cómo puede la Árbitro conceder un remedio adecuado si omite evaluar parte de la controversia?

El T.P.I. obvió toda discusión en torno a este asunto de fundamental importancia y redujo la controversia a la afirmación de que las partes conocían el Reglamento para el Orden Interno de los Servicios de Arbitraje del Negociado que dispone que carece de jurisdicción para entender en casos de hostigamiento sexual.

La consecuencia de aceptar tal determinación implica que una persona a quien se le ha imputado un comportamiento que puede constituir hostigamiento sexual, se le condona éste sin evaluarlo. El empleado acusado de hostigador se libera de tan pesada carga acudiendo al Negociado. Tal conclusión es inaceptable.

El patrono tiene una obligación impuesta por la Ley 17, *supra*, de evitar el comportamiento que constituya hostigamiento sexual en el lugar de trabajo. De hecho, el patrono incurre en responsabilidad civil de no atender la queja formulada por la empleada.

Como regla general, los Tribunales requieren a las partes agotar los remedios contractuales antes de acudir a un Tribunal salvo que exista justa causa. *Pagán v. Fundación Hospital Dr. Pila*, 114 D.P.R. 224 (1983). El arbitraje es parte de un andamiaje estructurado en un convenio colectivo que ambas partes consideran idóneo para resolver sus controversias. *Pérez v. Autoridad de Fuentes Fluviales*, 87 D.P.R. 118 (1963).

Las partes acordaron en el presente caso someter sus quejas y agravios ante un árbitro del Negociado para resolver las controversias que emanan de la relación contractual entre ellos.

Sin embargo, si el Negociado no puede, por sus propias limitaciones reglamentarias, atender, dirimir y resolver una controversia que incluye una política pública de alto interés, entonces deja de ser un foro adecuado para las partes.

El Reglamento dispone varias instancias en las que el Negociado no ofrecerá sus servicios, aunque medie un acuerdo de las partes para someterse a un arbitraje. El Artículo 3(d) del Reglamento excluye el arbitraje para casos de discrimen cubierto por las disposiciones de la Ley 100, *supra*, y la Ley 17, *supra*, por hostigamiento sexual.

La Árbitro, en el presente caso, celebró la audiencia y luego, en su laudo, adjudicó los hechos parcialmente, pues no atendió ni consideró las imputaciones de hostigamiento sexual. Nos preguntamos ¿qué beneficio tiene atender fraccionadamente un caso de despido? ¿Cómo lograr armonizar tal actuación con el propósito de un arbitraje de resolver controversias de forma rápida y económica?

La vigorosa política pública a favor del arbitraje tiene que ceder cuando su uso significaría la derrota de una política pública igualmente importante de protección contra el discrimen por razón de sexo y de prohibición al hostigamiento sexual en el empleo.

De otra parte, estimamos que la disposición reglamentaria citada por la Árbitro y el T.P.I. no tiene el alcance que pretende dársele. El Artículo III (d) del Reglamento del Negociado dispone que *"[n]o se ventilarán ante los árbitros del Negociado los casos por discrimen cubiertos por las leyes siguientes: Ley 100..., ley que prohíbe el hostigamiento sexual en el empleo..."*.

Tal disposición se refiere a la situación en que un empleado se siente agraviado por el discrimen y reclama contra su patrono. Tal situación no procede llevarse a arbitraje en el Negociado porque el empleado agraviado tiene la vía del Tribunal disponible. *Vélez v. Serv. Legales de P.R., Inc.,* 144 D.P.R. 673 (1998).

El presente caso plantea una situación diferente. Un patrono tomó una acción disciplinaria contra un empleado por alegada conducta impropia y hostigamiento sexual. Lo que corresponde adjudicar al Negociado es la alegada conducta impropia del empleado y, de probarse la conducta, si el castigo era apropiado.

La Árbitro evaluará la conducta impropia y no si el empleado agraviado —en este caso, la Srta. Hernández—, tiene un remedio contra su patrono, al amparo de la Ley 17, *supra*.

El resultado del arbitraje en el presente caso fue dejar sin efecto una acción disciplinaria de despido sin considerar la imputación de hostigamiento sexual. Las partes no pueden pactar en contra de la ley y someterse a un procedimiento de arbitraje que atiende parcialmente una controversia que guarda relación con la obligación legal impuesta a un patrono de tener un ambiente de trabajo libre de hostigamiento sexual.

La empleada unionada tiene derecho, conforme lo reconoce la Ley 17, *supra*, a no ser hostigada sexualmente en el empleo. El patrono tiene la obligación, conforme lo dispone la Ley 17, *supra*, de tomar acciones para garantizar un ambiente de trabajo libre de hostigamiento sexual y, de no hacerlo, puede responder civilmente. El patrono tiene, también, el peso de probar que medió justa causa en el despido. Ley 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185a, *et seq.*

La Árbitro y el T.P.I. obviaron planteamientos tan fundamentales y permitieron, con su decisión, que regrese al lugar de trabajo un empleado indultado por ficción jurídica de cualquier comportamiento impropio

relacionado con el hostigamiento sexual, puesto que las alegaciones de tal comportamiento nunca fueron dirimidas.

La conclusión del T.P.I. es incorrecta en derecho. La Árbitro no debió considerar la controversia parcialmente. Atender unas quejas y otras no provoca un resultado dilatorio, priva al patrono de su debido proceso de ley y permite una decisión que violenta los derechos de la empleada que se querelló.

En el presente caso, la señorita Hernández, quien era unionada, había acudido previamente a la Unión sin lograr acción y luego se quejó ante su patrono. El patrono investigó la queja y resolvió despedir al empleado.

La Ley de Hostigamiento Sexual le impone al patrono la obligación de actuar para evitar el hostigamiento sexual en el empleo. Si el patrono actúa en cumplimiento de esa obligación, debe reconocérsele el derecho a presentar la prueba que posea y que la corrección de la acción disciplinaria sea adjudicada en sus méritos. La Árbitro debió atender en su totalidad la controversia o abstenerse de intervenir.

## IV

Considerando todo lo anterior, resolvemos revocar la sentencia del T.P.I. y dejar sin efecto el laudo de arbitraje. Se devuelve la causa al Negociado de Conciliación y Arbitraje para que adjudique la totalidad de la controversia.

Así lo pronunció el Tribunal y lo certifica la Secretaria.

Lcda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones