# 2006 DTA 47

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL VI**

SR. VÍCTOR RODRÍGUEZ FIGUEROA, REPRESENTANTE UNIÓN DE
TRABAJADORES DE ESTACIONAMIENTO INDEPENDIENTE
Recurrente

v.

JOSÉ MAZZITELLI, GERENTE GENERAL DE CENTRAL PARKING SYSTEM OF P.R., INC.
Recurrido

Núm. KLCE-2005-00927

San Juan, Puerto Rico, a 10 de febrero de 2006

Panel integrado por su Presidente, el Juez Urgell Cuebas,
y los Jueces Gierbolini y Rodríguez Muñiz

Rodríguez Muñiz, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Central Parking System of P.R. Inc. (Central) nos solicita revisemos la resolución emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, (TPI), el 27 de mayo del 2005, notificada el 9 de junio del 2005 y nuevamente, mediante notificación enmendada, el 10 de junio del 2005. Mediante la misma, confirmó un laudo emitido el 15 de abril del 2004, que resolvió que el despido del Sr. Javier Rivera (Sr. Rivera) fue injustificado y le ordenó al patrono reponer al empleado a su puesto y pagarle todos los haberes dejados de percibir desde la fecha del despido.

### I

Los hechos no controvertidos son los siguientes:

*"El Sr. Rivera fue empleado unionado de Central desde el 12 de agosto de 2002 hasta el 14 de julio del 2003. Durante dicho período, en fechas distintas, Central emitió un total de cuatro (4) memorandos dirigidos al Sr. Rivera por violar varias disposiciones de las Reglas de Procedimiento disciplinario. Los primeros tres aparecen como firmados por el Sr. Rivera, pero el último aparece sin firma debido a su negativa a acreditar su recibo.*

*El 14 de julio del 2003, Central despidió al Sr. Rivera de su empleo, basado en el inciso treinta y siete (37) de su reglamento disciplinario.*

*El Sr. Víctor Rodríguez Figueroa, representante de la Unión de Trabajadores de Estacionamientos Independientes, presentó una querella ante el Negociado de Conciliación y Arbitraje (Negociado de Conciliación) en contra de Central por el alegado despido injustificado del Sr. Rivera. En la misma hizo constar que se cumplió con el procedimiento establecido en el Convenio Colectivo antes de solicitar arbitraje.*

*El 5 de abril del 2004, el Negociado celebró una vista a la cual Central no compareció. La árbitro determinó que Central no compareció ni se excusó a pesar de haber sido debida y oportunamente notificada. Por ello, y conforme al Reglamento para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje del Departamento del Trabajo, celebró la audiencia de dicha parte.*

En la resolución emitida posteriormente, determinó que el despido del Sr. Rivera fue injustificado y ordenó a Central a reponerlo en su puesto y pagarle todos los haberes dejados de percibir desde la fecha del despido.

El 17 de mayo de 2004, Central presentó un recurso de revisión ante el TPI. Señaló la comisión de dos (2) errores por parte del Negociado de Conciliación: 1) adjudicar una reclamación sin tener jurisdicción por no haberse cumplido con el procedimiento de querellas y arbitraje estipulado por las partes en su convenio colectivo, y 2) adjudicar un remedio contrario a la ley ante una reclamación por despido injustificado bajo la Ley Núm. 80 del 30 de mayo del 1976 (Ley 80).

El 14 de septiembre del 2001, la Unión de Trabajadores Independientes de Estacionamientos presentó Oposición a Impugnación de Laudo de Arbitraje.

Luego de otros incidentes interlocutorios, el 27 de mayo del 2005, el TPI emitió la resolución aquí recurrida, mediante la cual confirmó el laudo y declaró no ha lugar a la solicitud de revisión."

Inconforme, Central presentó recurso de *certiorari* en el que señaló la comisión de dos (2) errores por parte del TPI:

"**Primer Error**: Erró el Honorable Tribunal de Primera Instancia al no emitir opinión en cuanto a la falta de jurisdicción del Negociado de Conciliación y Arbitraje para adjudicar la controversia.

**Segundo Error:** Erró el Honorable Tribunal de Primera Instancia al determinar que el laudo que emitió el Negociado de Conciliación y Arbitraje fue conforme a derecho."

## II

Sobre el primer error señalado, lo esencial en este caso es determinar si el árbitro tenía jurisdicción para atender la presente reclamación.

El Artículo VIII del convenio entre las partes dispone:

"**Sección 1**: ...los empleados se obligan a resolver todas las quejas, querellas y/o controversias que surjan en relación a la interpretación, implementación y administración de este convenio, a través del procedimiento establecido en este Artículo.

**Sección 2**: La Compañía vendrá obligada a recibir y resolver todas las querellas y/o controversias que surjan a través del procedimiento aquí establecido, siempre y cuando la Unión y/o los empleados cumplan con los términos establecidos para la radicación y tramitación de dichas querellas.

Se entenderá por querella cualesquiera quejas, agravios, cualquier reclamación de cualquier naturaleza que tenga la Unión y/o empleados... por alegada violación, controversia, desacuerdo o interpretación de cualquier cláusula, disposición o artículo del presente convenio...

**Sección 3**: Toda querella será tramitada de acuerdo a los siguientes pasos:

**A. Primer Paso**: Cualquier empleado... que tenga una querella... deberá ... presentar su queja o agravio por escrito al Gerente General de la Compañía o a su designado dentro de los próximos cinco (5) días laborables de la ocurrencia de los hechos que motivaron la queja.

**B. Segundo Paso**: El Gerente General o su designado enviará su contestación por escrito a la persona que le envió la querella durante los siguientes cinco (5) días laborables... Si la contestación... no resuelve la

*querella, la Unión radicará la querella en el Negociado de Conciliación y Arbitraje del Departamento del Trabajo dentro de los diez (10) días laborables de recibida la contestación a la querella.*

*Sección 4:...*

*Sección 5:...*

*Sección 6: El árbitro no podrá modificar, ..., o añadir a ninguno de los términos y/o condiciones de este convenio.*

*Sección 7: ...*

*Sección 8: La querella se considerará resuelta en contra de la parte que no cumpla con los términos acordados en este artículo."*

En su recurso, Central alega que el Sr. Rodríguez no cumplió con el procedimiento establecido en el convenio colectivo pues no presentó su queja por escrito a la Compañía durante los próximos cinco (5) días laborables a aquél en que ocurrió su despido, 14 de julio del 2003. Por ello, entiende que el Negociado de Conciliación y Arbitraje no tenía jurisdicción para atender la reclamación presentada.

En apoyo de su posición, argumenta que de los récords de Central no surge que la reclamación del Sr. Rivera hubiese sido cursada al Gerente General de Central o a su designado.

Del Laudo emitido por la Árbitro Marilú Díaz Casañas citamos lo pertinente a esta controversia: *"... Por parte de la Compañía no compareció representante alguno a pesar de que ambas partes estuvieron debida y oportunamente notificadas y citadas para los procedimientos arbitrales. Ninguna de las notificaciones fue devuelta por la Oficina del Correo, no recibimos llamada o documento alguno solicitando el aplazamiento de la audiencia y a pesar de que los procedimientos los comenzamos una hora después de la pautada, el Patrono no se comunicó con nosotros para excusarse.*

*Conforme al Reglamento para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje del Departamento del Trabajo, en su Artículo XI, La Vista de Arbitraje y Facultades del Árbitro, inciso i), procedimos a celebrar la audiencia ex–parte..."*. Apéndice del recurso de *certiorari*, págs. 23-24.

El inciso 9) del antes citado Artículo XI dispone que: *"Las partes deberán comparecer a la vista debidamente preparadas en la fecha, hora y sitio señalado por el árbitro con toda la prueba oral y documental necesaria, incluyendo copia del convenio colectivo."* Reglamento Para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos; aprobado el 3 de junio del 2003.

La Árbitro, al citar debida y oportunamente a Central, adquirió jurisdicción sobre dicha parte. Le correspondía a ésta comparecer según citada y presentar en la vista la prueba que presentó, por primera vez, ante el TPI y que pretende presentar ahora ante nosotros, a los efectos de que el Sr. Rivera no cursó inicialmente su reclamación al Gerente General o a su representante.

De la Solicitud Para Designación o Selección de Árbitro que presentó la Unión ante el Negociado del Trabajo y Recursos Humanos, donde se presentó la querella con la controversia a ser resuelta, consta que el representante de la Unión informó que cumplió con el procedimiento establecido en el Convenio Colectivo antes de solicitar arbitraje. ■ No podía la parte querellada, Central, incumplir con la citación y ausentarse de la vista donde podía demostrar lo contrario para lograr que la querella se considerara resuelta en contra del Sr.

Rivera, menos aún puede pretender presentar esa prueba por primera vez a nivel apelativo para tratar de probar la falta de jurisdicción de la árbitro.

El primer error alegado no fue cometido.

## III

A través del arbitraje, se pretende promover la resolución de las querellas y controversias que se suscitan dentro del marco obrero-patronal, habiéndose reconocido que el arbitraje pactado en el convenio constituye una herramienta ideal para fortalecer la negociación colectiva, *J.R.T. v. Junta Adm. Muelle Mun. Ponce,* 122 D.P.R. 318, 330 (1988); En *J.R.T. v. Corp. de Crédito*, 124 D.P.R. 846, 849-850 (1989), el Tribunal Supremo expuso sobre la doctrina que gobierna la revisión judicial de los laudos de arbitraje como sigue:

*"La trayectoria de nuestras decisiones en materia de arbitraje obrero-patronal se caracteriza por una marcada deferencia hacia los laudos de arbitraje. En consonancia con este principio, hemos reiterado que un laudo fundamentado en la sumisión voluntaria de las partes está sujeto a revisión judicial sólo si las partes convienen en que la controversia sometida al árbitro sea resuelta conforme a derecho. (Citas omitidas.) En ausencia de disposición expresa a esos efectos, un laudo sólo puede ser impugnado si se demuestra la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión en resolver todas las cuestiones en controversia que se sometieron o que el mismo resulte contrario a la política pública".*

Lo antes expresado responde a que las partes, una vez firman un convenio colectivo donde someten sus disputas obrero-patronales a un procedimiento de arbitraje, sustituyen al árbitro por las cortes para resolver estas disputas. *U.G.T. v. Challenger Caribbean Corp.,* 126 D.P.R. 22, 29 (1990).

Sin embargo, aun cuando la norma general postula la autorestricción o abstención judicial, un laudo de arbitraje podrá ser revisado si el convenio colectivo o el acuerdo de sumisión suscrito por las partes dispone que el laudo deberá ser emitido conforme a derecho. *J.R.T. v. Securitas, Inc.,* 111 D.P.R. 580, 582 (1981); *C.R.U.V. v. Hampton Dev.,* 112 D.P.R. 59, 64 (1982); *U.I.L. de Ponce v. Dest. Serrallés, Inc.,* 116 D.P.R. 348, 353 (1985); *J.R.T. v. Hato Rey Psychiatric Hosp.,* 119 D.P.R. 62, 68, 1987; *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 D.P.R. 318, 326 (1988).

Ahora bien, que un laudo sea emitido conforme a derecho significa:

*"Condicionar un laudo a que sea `conforme a derecho' significa que el árbitro no puede ignorar las normas interpretativas de derecho sustantivo emitidas por los Tribunales Supremos de Estados Unidos y Puerto Rico en el campo de derecho laboral y que se reputarán persuasivas las decisiones de los tribunales de primera instancia y de agencias administrativas, y los laudos y escritos de reputados árbitros." J.R.T. v. Hato Rey Psychiatric Hosp., supra,* a la pág. 68.

Cuando las partes expresen en el convenio colectivo o en el acuerdo de sumisión que el laudo deberá ser emitido conforme a derecho, *"los árbitros deben seguir las reglas de derecho y rendir sus laudos a tenor con las doctrinas legales prevalecientes. Si el convenio de arbitraje nada dice en cuanto a esto, de conformidad con la Ley Común y bajo la mayoría de las leyes de arbitraje, los árbitros pueden declarar cuál es la ley, y ningún laudo será anulado a causa de sus errores de derecho." Autoridades sobre Hogares v. Tribl. Superior,* 82 D.P. R. 344, 354 (1961).

Es decir, cuando se le exige a un árbitro que resuelva conforme a derecho, éste tiene la obligación de seguir las reglas de derecho y rendir sus laudos a tenor con las doctrinas legales prevalecientes. Lo esencial para las partes es que el tribunal intervenga en la etapa de revisión y determine si el árbitro estuvo correcto en la

aplicación del derecho. En estos casos, nuestra función es tratar el laudo como una sentencia del tribunal de menor jerarquía con el fin de determinar si la sala sentenciadora cumplió con la obligación de resolver según el derecho vigente. No se trata de relitigar la controversia en un proceso civil ordinario, lo que convertiría la labor del árbitro en un ejercicio inútil y desvirtuaría la naturaleza del procedimiento de arbitraje laboral. Queda claro que la revisión de un laudo de arbitraje no constituye un juicio *de novo* y que el tribunal debe limitarse a verificar que la determinación del árbitro sea conforme a derecho. *U.I.L. de Ponce v. Destilería Serrallés, Inc.,* 116 D.P.R. 348, 355 (1985); *Rivera v. Samaritano & Co.,* 108 D.P.R. 604, 609 (1979).

Lo anterior no quiere decir que se haya alterado la norma de autorestricción de los tribunales al ejercer su función revisora sobre los árbitros. Cuando se ha dispuesto, mediante un acuerdo de sumisión o mediante un convenio colectivo, que el laudo tiene que ser conforme a derecho, los tribunales pueden, no solamente revisar los laudos por las causales tradicionales, sino que también pueden considerar cualquier error de derecho sustantivo que se haya cometido en la aplicación del derecho laboral. *Unión Industrial Licorera de Ponce v. Destilería Serrallés,* 116 D.P.R. 348, 353 (1985), *J.R.T. v. Corporación de Crédito Agrícola,* 124 D.P.R. 846, 849 (1989). Sin embargo, aun en casos donde se permite revisar la validez jurídica del laudo, los tribunales no deben inclinarse fácilmente a invalidarlos a menos que sea evidente que no fueron resueltos conforme a derecho. *Rivera v. Samaritano & Co., Inc.,* 108 D.P.R. 604, 609 (1979). Es por ello que el Tribunal Supremo ha expresado que cuando no se dispone que el laudo sea conforme a derecho, éste no será anulado por sus errores de derecho, pero aún siendo el laudo de arbitraje conforme a derecho *"una discrepancia de criterio con el laudo no justifica la intervención judicial, pues destruye los propósitos fundamentales del arbitraje de resolver las controversias rápidamente, sin los costos y demoras del proceso judicial." Id.*

## IV

De otra parte, en cuanto a si el remedio exclusivo que puede otorgar un árbitro en casos de despido es el contemplado en la Ley Núm. 80, 29 L.P.R.A. § 185 (a), *et seq.* (*"Ley Núm. 80"*), debemos establecer que la Ley Núm. 80, *supra,* es la disposición legal que actualmente regula el despido injustificado. Su exposición de motivos y su historial legislativo demuestran la preocupación del legislador de proteger a los trabajadores en la tenencia de empleo y su interés por desalentar la incidencia de despidos injustificados.

La Ley Núm. 80 define lo que se entenderá como justa causa de la siguiente manera:

*'Se entenderá por justa causa para el despido de un empleado de un establecimiento:*

*(a) Que el obrero siga un patrón de conducta impropia o desordenada.*

*(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.*

*(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.*

*(d)...*

*(e)...*

*(f)...*

*No se considerará despido por justa causa aquél que se hace por mero capricho del patrono o sin razón*

*relacionada con el buen y normal funcionamiento del establecimiento. Tampoco se considerará justa causa para el despido de un empleado la colaboración o expresiones hechas por éste relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley. En este último caso, el empleado así despedido tendrá derecho, además de cualquier otra adjudicación que correspondiere, a que se ordene su inmediata restitución en el empleo y a que se le compense por una suma igual a los salarios y beneficios dejados de percibir desde la fecha del despido hasta que un tribunal ordene la reposición en el empleo.*" (Énfasis suplido.) 29 L.P.R.A. § 185b.

Ciertamente, la Ley Núm. 80 no pretende ni puede, considerada la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta conteniendo una lista de faltas claramente definidas y la sanción que corresponde a cada una y en cada instancia, si ha de ser reprimenda, suspensión o despido. Cabe destacar que el propósito de esta ley es dar mayor protección a los trabajadores en situaciones de despido a lo que se vean expuestos y hacer más restrictivo el concepto de justa causa. Séptima Asamblea Legislativa, Senado, 23 de abril de 1975; *Srio. del Trabajo v. I.T.T.,* 108 D.P.R. 538, 541 (1979). No obstante, es opción del patrono que puede adoptar reglas y reglamentos razonables que estime necesarios para el buen funcionamiento de la empresa, siempre que copia escrita de los mismos se haya suministrado oportunamente, *Srio. del Trabajo v. I.T.T., supra,* a las págs. 542-543.

Las reglas y reglamentos que establecen las normas de trabajo de una empresa, y los beneficios y privilegios que disfrutará el empleado, forman parte del contrato de trabajo. Como regla general, un patrón de incumplimiento de estas normas podrá dar lugar a un despido justificado. Sin embargo, la ausencia de razonabilidad de esas normas podría convertir el despido en uno caprichoso o arbitrario y, por lo tanto, injustificado. Los beneficios y privilegios contenidos en esas reglas o reglamentos constituyen derechos del empleado y un despido en violación a éstos también resultaría en un despido injustificado. *Santiago v. Kodak Caribbean, Ltd.,* 129 D.P.R. 763,775-776 (1992). A su vez, el patrono tiene perfecto derecho a evaluar a su personal, a base de las normas de la empresa, y ello debe tomarse en consideración a los fines de determinar justa causa para el despido. Además, tiene derecho a evaluar a su personal, a base de los valores morales y de orden público prevalecientes en Puerto Rico, de conocimiento general en nuestra sociedad, cuando el cumplimiento o violación de los mismos puede mantener o alterar el buen y normal funcionamiento de la empresa. Tales evaluaciones tienen que ser razonables.

Dichos ejercicios evaluativos pueden indicar la necesidad de dirigir apercibimientos al empleado por razón de deficiencias en su trabajo, de tomar medidas disciplinarias, u otras. Esas evaluaciones forman parte del historial individual de cada empleado dentro de la empresa para la cual trabaja. Su licitud y utilidad para múltiples fines, de naturaleza administrativa, operacional y de mejoramiento de la eficiencia y desarrollo de la empresa y de sus empleados, es incuestionable.

Por otro lado, la Ley Núm. 80 crea una presunción de que el despido del empleado fue injustificado:

"*En toda acción entablada por un empleado reclamando los beneficios dispuestos en las secs. 185a et seq. de este título, el patrono vendrá obligado a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de cumplir con lo establecido en la sec. 185a de este título.*" 29 L.P.R.A. § 185k.

Le corresponde al patrono rebatir esa presunción. Si el patrono opone como defensa afirmativa haber mediado justa causa para el despido, deberá probar, al menos mediante preponderancia de la evidencia, que el despido estuvo justificado. *Rivera Águila v. K-mart de P.R.,* 123 D.P.R. 599,610 (1989); *Delgado Zayas v. Hosp. Int. Med. Avanzada, supra,* a la pág. 650; *Srio. del Trabajo v. I.T.T., supra,* a la pág. 544. En otras palabras, el patrono tiene el peso de demostrar que: (1) las reglas establecidas para el funcionamiento del

establecimiento son razonables; (2) que suministró copia escrita de dichas normas al empleado; y (3) que el empleado las violó en reiteradas ocasiones. *Jusino Figueroa v. Walgreens of San Patricio, Inc.*, **2001 J.T.S. 154**, a la pág. 372.

La Ley Núm. 80 contempla una indemnización para los empleados contratados por tiempo indefinido que son despedidos sin justa causa. El remedio que tiene el ex empleado es una indemnización equivalente a un (1) mes de sueldo, si el despido ocurre dentro de los primeros cinco (5) años de servicio; el sueldo correspondiente a dos (2) meses si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; y el sueldo correspondiente a tres (3) meses si el despido ocurre luego de los quince (15) años de servicio más una indemnización progresiva adicional equivalente a una (1) semana de compensación por cada año de servicio con el patrono, 29 L.P.R.A. § 185a. El Tribunal Supremo ha expresado que la compensación provista por la Ley Núm. 80 es el remedio **exclusivo** en casos de despido injustificado. *Porto y Siurano v. Bentley P.R., Inc.,* 132 D. P.R. 331, 342 (1992); *Rivera v. Security Nat. Life Ins. Co.,* 106 D.P.R. 517, 526 (1977). Sin embargo, esta exclusividad no se extiende a otras situaciones específicas dentro del campo laboral en las cuales el trabajador se encuentra protegido por legislación social especial. En estos casos, el remedio que se provee es superior al que tiene el trabajador que es despedido sin justa causa y que no se encuentra en estas situaciones específicas. El trabajador que se encuentra en una de estas situaciones no puede ser despedido en violación a estas leyes. Si esto ocurre, como regla general, el remedio que éstas proveen incluye la reinstalación en el empleo, los salarios dejados de percibir y, en algunos casos, los daños que el despido le ocasionó, así como, en ciertas ocasiones, una suma igual por concepto de penalidad. *Vélez Rodríguez v. Pueblo Int'l, Inc.,* 135 D.P.R. 500, 510-513 (1994).

Es importante recalcar que siendo el arbitraje laboral de origen contractual, el poder del árbitro para confeccionar un remedio está limitado, con contadas excepciones, solamente por los términos del convenio colectivo y el acuerdo de sumisión. Ambos definen y delimitan los poderes que disfruta el árbitro para confeccionar remedios. Así, la decisión de un árbitro, actuando dentro de la autoridad y el poder que le fueron conferidos, es final y no es revisable en los méritos por los tribunales a no ser que estén presentes las circunstancias de excepción ya indicadas, a saber, que las partes hayan convenido que la controversia sometida al árbitro sea resuelta conforme a derecho o la parte que pretenda impugnarlo pueda demostrar la existencia de fraude, conducta impropia del árbitro, falta de debido proceso de ley, omisión de resolver todas las cuestiones sometidas, o que el laudo emitido infringe la política pública. *S.I.U. de P.R. v. Otis Elevator, supra,* a la pág. 836. Ello tiene que ser así particularmente en el ámbito de la confección de remedios, toda vez que para que el arbitraje laboral pueda ser efectivo, se requiere amplia flexibilidad para poder ajustar los remedios a las múltiples situaciones y conflictos que continuamente surgen dentro del ámbito de las relaciones obrero-patronales. En cuanto a los remedios concedidos por despido injustificado, el Tribunal Supremo expresó en *J.R. T. v. Securitas, Inc.,* 111 D.P.R. 580, 583 (1981) que:

*"No se nos ha demostrado que la intención legislativa haya sido fijar sanciones máximas exclusivas para casos de despido cuando media un convenio colectivo y un amplio acuerdo de sumisión sobre la justificación de la cesantía. ¿Cómo es que puede interpretarse que la legislación sobre la mesada ha obedecido por décadas al propósito de impedir que un árbitro, bajo un acuerdo de sumisión que no limite claramente sus poderes, ordene la reposición de un empleado y el pago de los sueldos dejados de percibir, más intereses? En Puerto Rico, hemos distinguido tajantemente entre los derechos bajo un convenio colectivo y los derechos de mesada. En Wolfe v. Neckwear Corporation, 80 D.P.R. 537, 543 (1958), afirmamos:*

*Naturalmente, en dichos convenios colectivos de trabajo, la ausencia de causa justa da derecho a la reposición y al pago de los salarios dejados de devengar, y no se trata de una simple cuestión de mesada...."*.
(Énfasis suplido.)

Posteriormente, el Tribunal Supremo expresamente señaló que *"La Ley Núm. 80 de 30 de mayo de 1976*

*(29 L.P.R.A. secs. 185a-185m) no aplica cuando están involucrados convenios colectivos (citas omitidas)."* *Vélez Rodríguez v. Pueblo Int'l, Inc., supra,* a la pág. 511, nota alcalce 11. No debe quedar duda alguna de que carente disposición a los efectos de que el laudo de arbitraje sea conforme a derecho, un árbitro tiene amplia discreción en otorgar inclusive más remedios que los que concede la ley.

Ahora bien, en cuanto a los laudos de arbitraje conforme a derecho debemos cuestionarnos si la Ley Núm. 80 es el único remedio que poseen los árbitros ante un despido injustificado. La contestación dependerá de si el despido es una acción disciplinaria protegida por las disposiciones convenidas entre las partes o en ausencia de tales acuerdos, será exclusivamente a base de la aplicación de la Ley Núm. 80. En el último caso entendemos que el único remedio disponible es la mesada.

A pesar de que el Tribunal Supremo expresó en la nota alcalce del caso de *Vélez Rodríguez v. Pueblo Int'l, ante,* citando a *J.R.T. v. Securitas, Inc., supra,* que la Ley Núm. 80 no aplica cuando están involucrados los convenios colectivos, no debemos olvidar que ello se refiere a casos donde el laudo no es conforme a derecho.

Ello, en virtud de la amplia facultad que el Tribunal Supremo le ha reconocido a los árbitros para confeccionar el remedio adecuado en ausencia de restricción en el convenio o en el acuerdo de sumisión. También nuestro más alto foro ha respaldado el remedio de reposición cuando el convenio, a pesar de requerir que el laudo sea conforme a derecho, provee dicho remedio más el pago de los haberes dejados de percibir de manera expresa. *J.T.R. v. Caribbean Towers, Inc.,* 99 D.P.R. 595 (1971); *S.I.U. de P.R. v. Otis Elevator, supra,* [105 D.P.R. 195 (1976)]. **No obstante, el caso de autos es distinguible en cuanto se requiere que el laudo sea conforme a derecho y el convenio no provee un remedio particular para el caso de despido injustificado, ni tampoco requiere que el despido sea por causa justificada. Ante estas circunstancias, el árbitro debió limitarse a lo dispuesto en la Ley de Despido Injustificado.**

Ciertamente, la protección que ofrece el sistema arbitral para este tipo de conducta observada por el empleado no es teórica; los árbitros, con mucha frecuencia, ordenan a los patronos reinstalar a los empleados, con paga atrasada y dejan sin efecto las sanciones disciplinarias impuestas por el patrono. Fernández, Demetrio, *El Arbitraje Obrero-Patronal,* Legis, Ed. S.A., Colombia 2000, a la pág. 208. De hecho, la reinstalación de un empleado ha sido el remedio común y más usado por los árbitros en casos de arbitraje laboral por despido ilegal. Fernández, *supra,* a la pág. 221. Sin embargo, no debemos olvidar ni pasar por alto que ello no es así cuando el remedio tiene que ser conforme a derecho. La norma respecto a despidos injustificados bajo la Ley Núm. 80 es clara; el único remedio disponible es la mesada, excepto, según contemplado por el propio estatuto, en aquellos casos en que el empleado fue despedido sin justa causa para ello por haber colaborado o hecho expresiones relacionadas con el negocio de su patrono en una investigación ante cualquier foro administrativo, judicial o legislativo, ya que éste tendrá derecho a que sea ordenada su inmediata restitución. Cuando la letra de la ley es clara y libre de toda ambigüedad, los tribunales no deben menospreciar el texto legislativo bajo el pretexto de hacer cumplir su espíritu. *Martínez Vázquez v. Rodríguez Laureano,* __ D.P.R.__ (2003), **2003 J.T. S. 134**, a la pág. 33.

## V

El Artículo VIII sobre Procedimiento de Querellas y Arbitraje del convenio colectivo negociado entre las partes dispone en su Sección 5 lo siguiente: *"La decisión del árbitro será final y obligatoria para las partes siempre que sea conforme a derecho."*

En consecuencia, el segundo error alegado fue cometido.

Conforme a las normas de derecho antes expuestas, el remedio exclusivo al que tiene derecho el Sr. Rivera es aquél dispuesto en la Ley Núm. 80; es decir, a un mes de sueldo por haber ocurrido el despido dentro de los primeros cinco (5) años de servicio. ■

## VI

Por los fundamentos anteriormente expuestos, expedimos el recurso de *certiorari* presentado; resolvemos que el Negociado de Conciliación y Arbitraje del Departamento del Trabajo tenía jurisdicción en el caso, pero modificamos el remedio concedido. El Sr. Javier Rivera sólo tendrá derecho, como compensación por su despido injustificado, a la mesada que le concede la Ley Núm. 80, pero no tendrá derecho a ser repuesto en su empleo ni a que se le paguen los haberes dejados de percibir desde la fecha de su despido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones