# 2007 DTA 78

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE CAROLINA**
**PANEL XI**

RAFAEL PAGÁN QUESTELL
Demandante-Recurrido

v.

UNITED PARCEL SERVICES; JOSÉ CASTILLO Y JOSÉ ORAMA
Demandados-Peticionarios

Núm. KLCE-2006-01342

San Juan, Puerto Rico, a 6 de junio de 2007

Panel integrado por su Presidente, el Juez Ortiz Carrión,
y las Juezas Feliciano Acevedo y Fraticelli Torres

Fraticelli Torres, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

United Parcial Services, José Orama y José Castillo nos solicitan que expidamos el auto de *certiorari* y revoquemos la resolución del Tribunal de Primera Instancia, Sala Superior de Carolina, que declaró sin lugar una moción de desestimación por falta de jurisdicción del tribunal para entender en una demanda incoada en su contra. Alegan que el foro recurrido erró al negarse a desestimar la demanda, primero, cuando el asunto en controversia estaba pendiente de resolución ante un árbitro laboral y, posteriormente, luego del laudo arbitral que concluyó que el despido fue justificado, por la aplicación de las doctrinas de cosa juzgada e impedimento colateral.

La parte recurrida argumenta que estas doctrinas no son de aplicación al caso de autos, porque el árbitro se limitó a dilucidar la única cuestión en controversia, si el despido fue justificado, pero el laudo no consideró las otras reclamaciones que se incluyeron en la demanda porque *"éstas ni están contempladas en el Convenio Colectivo ni fueron objeto de sumisión al árbitro"*.

Por los fundamentos que exponemos en esta resolución, denegamos la expedición del auto solicitado.

### I

De los documentos que constituyen el expediente del recurso, surgen los siguientes hechos relevantes.

El señor Pagán comenzó a trabajar a tiempo parcial para United Parcel Services (UPS) el 2 de julio de 1998, en el puesto de *"Ground Handler"*. Sus funciones principales se circunscribían a distribuir y cargar paquetes a los contenedores en el departamento conocido como *"San Juan Twilight"*. A partir del año 2000, el peticionario se desempeñó como empleado regular, a jornada parcial, de la compañía. Su turno de trabajo era de 6:00 a 11:00 p.m.

El 29 de octubre de 2004, UPS despidió al señor Pagán. De acuerdo con lo expresado por los peticionarios en su recurso, el despido se debió a que él violó los Artículos 10,11 y 14 del convenio colectivo, que prohíben

la paralización, obstrucción o interrupción de las operaciones de la empresa, y por la aplicación del Artículo 27 que considera el concepto de antigüedad al momento de distribuir las tareas.

El señor Pagán, por su parte, alegó que el despido fue el resultado de un patrón de acoso y persecución en su contra por negarse a trabajar después de concluir su turno regular de trabajo y a efectuar labores que no corresponden a la descripción de sus deberes, según el puesto que ocupa en la empresa.

El 2 de marzo de 2005, UPS determinó dejar sin efecto la sanción impuesta y reinstalar al señor Pagán en su puesto. La reinstalación se efectúo sin el pago retroactivo de los salarios dejados de percibir, asunto que, según el recurrido, *"se encuentra remitido a un árbitro cuyo laudo está pendiente"*.

De vuelta en su trabajo, la compañía le imputó nuevamente al señor Pagán, mediante comunicaciones escritas, la violación de los artículos antes mencionados porque éste se negó a continuar trabajando luego de concluir su jornada regular, según se le requirió en dos ocasiones distintas. En la última de estas comunicaciones se le advirtió al recurrido que podía perder su empleo de incurrir nuevamente en esa conducta. Finalmente, mediante un escrito con fecha de 27 de abril de 2005, UPS despidió al señor Pagán por negarse a trabajar en exceso de su jornada, en contravención de los artículos del convenio colectivo ya aludidos.

El 28 de abril de 2005, la Unión presentó una querella ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo por entender que el despido del señor Pagán no estuvo justificado. De una parte, la Unión alegó que el *"convenio colectivo no faculta al patrono para que éste pueda obligar a un empleado, cuya jornada es a tiempo parcial, a laborar en exceso de su jornada regular"*. De otra, UPS alegó que el despido se debió a la renuencia reiterada del señor Pagán a realizar tareas en exceso de su jornada laboral; que dicha situación interrumpió y obstruyó la continuidad de las operaciones de la compañía en contravención de los artículos 11 y 14 del convenio colectivo; y que el recurrido se negó a acatar el principio de antigüedad que determina la asignación de las tareas a realizarse por los miembros de la unidad contratante.

Entre tanto, mientras la controversia estaba pendiente de resolución por el árbitro designado, el 31 de octubre de 2006, el señor Pagán presentó una demanda en contra de UPS, del señor José Orama, Gerente de Operaciones, y el señor José Castillo, Gerente para el Caribe, por daños y perjuicios, discrimen, acoso moral y hostigamiento, violación de contrato de empleo y violación de derechos constitucionales, al amparo de lo dispuesto en el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, la Ley Núm. 114 de 7 de mayo de 1942, 19. LP.R.A. sec. 140 *et seq.*, la Ley Núm. 115 de 20 de diciembre de 1991, 21 L.P.R.A. sec. 194, y del Artículo II, secciones 1, 7, 8 de la Constitución de Puerto Rico.

El 17 de noviembre de 2005, los peticionarios contestaron la demanda y alegaron, entre otras defensas afirmativas, que el tribunal carecía de jurisdicción para entender en el caso porque el señor Pagán era un empleado unionado, representado por la Unión de Tronquistas, y el convenio colectivo disponía que cualquier controversia entre la Unión y la Compañía debía ser resuelta mediante el mecanismo de arbitraje. Añadieron que el recurrido seleccionó ese mecanismo para cuestionar la legalidad de su despido al presentar la querella A-05-2526 y que lo único que restaba era esperar la determinación del árbitro, toda vez que ya se había celebrado la correspondiente vista de arbitraje.

Luego de presentar su contestación a la demanda, el 28 de febrero de 2006, los peticionarios sometieron una **moción de desestimación por falta de jurisdicción y/o sentencia sumaria** mediante la cual reiteraron que *"por ser el señor Pagán un empleado unionado, que había iniciado un proceso de arbitraje, el tribunal carecía de jurisdicción para adjudicar las causas de acción relativas al despido, por tratarse de un asunto de jurisdicción exclusiva del arbitro, a tenor con el convenio"*.

Más tarde, el 13 de febrero de 2006, el árbitro del Negociado de Conciliación y Arbitraje emitió el laudo

que resolvió que el señor Pagán incurrió en las faltas imputadas por UPS, por lo que confirmó el despido y desestimó la querella presentada por la Unión. Este hecho fue informado al tribunal mediante moción presentada por los peticionarios el 19 de abril de 2006. En esta moción insistieron en su pedido de desestimación de la demanda, toda vez que, según argumentaron, lo resuelto mediante el laudo arbitral era vinculante para el foro judicial. Añadieron que la determinación de que el despido fue justificado tuvo el efecto de disponer de las otras reclamaciones incluidas en la demanda; además, que el laudo era final y firme, pues no se solicitó revisión judicial dentro del término concedido para ello.

El 15 de mayo de 2005, el señor Pagán se opuso a la pretensión de los peticionarios. Fundamentó su moción en que existe jurisprudencia federal que establece que se pueden ventilar en los tribunales controversias laborales *"fundamentadas en la Constitución o las leyes"* sin acudir previamente al procedimiento arbitral dispuesto en el convenio colectivo o aún después de dictado un laudo. Señaló, a su vez, que una cláusula de arbitraje en un convenio colectivo no constituye una renuncia automática a presentar reclamaciones ante un foro judicial; que la cláusula de arbitraje contenida en el convenio colectivo es *"una amplia que no demuestra la intención clara e inequívoca de renunciar a que controversias nacidas de derechos constitucionales y/o estatutarios se resuelvan ante el foro judicial"*; y que *"de una lectura del laudo mismo surge claramente que ninguna controversia relativa al patrón de hostigamiento, acoso moral, represalias, violación al derecho a la intimidad, ataques a la honra y dignidad personal fue sometida al árbitro ni que éste las resolviera"*.

Tras varios escritos de réplica de ambas partes, y luego de trabada la controversia de la manera reseñada, el 16 de agosto de 2006, el foro de instancia emitió la resolución recurrida en la que declaró sin lugar la solicitud de desestimación, y en la que señaló que *"adoptamos los argumentos de la oposición y los esbozados en este escrito para sostener nuestro dictamen"*.

Inconformes con tal determinación, los peticionarios recurren ante nos y plantean como único error del foro de primera instancia que se negó a desestimar la demanda aunque el asunto estaba pendiente de resolución por un árbitro laboral y, emitido el laudo a su favor, por la aplicación de las doctrinas de cosa juzgada e impedimento colateral.

Con el beneficio de la comparecencia de ambas partes, resolvemos la cuestión planteada.

## II

Es doctrina reiterada que los foros judiciales se abstendrán de entender en una controversia que las partes han acordado que someterán al proceso alterno del arbitraje. Esto es así tanto en el campo obrero-patronal como en otros ámbitos de las relaciones humanas. Se respeta así *"la clara política pública a favor del arbitraje como mecanismo para dilucidar las controversias obrero-patronales"*. *J.R.T. v. Corp. Crédito Agrícola*, 124 D.P.R. 846, 849 (1989). Y esta norma responde a que el arbitraje es un mecanismo rápido y menos costoso que los procedimientos judiciales, a la vez que ofrece mayor flexibilidad a las partes para resolver sus disputas de toda índole. *Pérez v. A.F.F.*, 87 D.P.R. 118, 127 (1963).

UPS alega que en el presente caso procede aplicar la doctrina de cosa juzgada, ya que existe identidad de partes, cosas y causas entre la querella presentada por la Unión ante el Negociado de Negociación y Arbitraje, que ya fue finalmente adjudicada, y la demanda presentada por el señor Pagán ante el Tribunal de Primera Instancia.

En el caso de autos, ya el laudo laboral sobre la cuestión del despido es final y firme, por lo que debemos determinar si esta determinación constituye cosa juzgada o es un impedimento colateral para **todas** las acciones que el señor Pagán presentó contra UPS ante el Tribunal de Primera Instancia. Para poder determinar si el foro judicial recurrido tenía jurisdicción para entender en las causas de acción incoadas por la parte recurrida contra UPS y otros, debemos previamente diferenciar las distintas causas de acción que penden contra estos últimos.

Para evitar repeticiones, tal distinción podemos establecerla al evaluar los criterios de la defensa de cosa juzgada planteada por los peticionarios en su segundo señalamiento de error.

La doctrina de cosa juzgada tiene su fuente estatutaria en el Artículo 1204 del Código Civil de Puerto Rico, el cual dispone que *"[p]ara que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aqu'el en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron"*. 31 L.P.R.A. sec. 3343. Esta doctrina está fundamentada en consideraciones de orden público, el interés del Estado en ponerle fin a los litigios y en proteger a los ciudadanos para que no se les someta en múltiples ocasiones a los rigores de un proceso judicial. Se procura poner fin a los litigios que ya han sido adjudicados en forma definitiva y, de este modo, garantizar la certidumbre y seguridad de los derechos ya declarados, además de evitar gastos adicionales al Estado y a los litigantes. *Worldwide Food Dis., Inc. v. Colón*, 133 D.P.R. 827, 833-834 (1993).

La defensa de cosa juzgada tiene, además, el efecto de evitar que en un pleito posterior se litiguen, entre las mismas partes, las mismas causas de acción o las controversias que ya fueron o pudieron haber sido litigadas y adjudicadas en un pleito anterior. *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 732-733 (1978); *Mercado Riera v. Mercado Riera*, 100 D.P.R. 940, 950 (1972).

El propio Art. 1204 dispone que *"[s]e entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas"*. 31 L.P.R.A. sec. 3343. La *"cosa"* a la cual se refiere el mismo artículo *"responde básicamente al objeto o materia sobre la cual se ejercita la acción"*. *Lausell Marxuach v. Díaz de Yáñez*, 103 D.P.R. 533, 535 (1975).

La *"causa"*, a su vez, *"es el motivo de pedir"*, o sea, *"significa el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas"*. Por tanto, al determinar si procede la defensa de cosa juzgada, debemos examinar *"si los hechos y fundamentos de las peticiones son los mismos en lo que afecta a la cuestión planteada"*. *A & P Gen. Contractors v. Asoc. Caná*, 110 D.P.R. 753, 765 (1981), que cita con aprobación a Scaevola y Manresa, respectivamente.

Sin embargo, el Tribunal Supremo de Puerto Rico también ha señalado que la palabra *"causa"*, para efectos de la defensa de cosa juzgada, *"tiene un sentido que no es de razón o motivo de un contrato o acto jurídico. Significa el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas, y no debe confundirse con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes"*, por lo que *"**podrá constituir lo primeramente resuelto cosa juzgada para el segundo pleito, cuando la nueva acción estuviera como embebida en la primera, o fuese consecuencia inseparable de la misma**"*. *Mercado Riera v. Mercado Riera*, 100 D.P.R., a las págs. 951-952; *Lausell Marxuach v. Díaz de Yáñez*, 103 D. P.R., a las págs. 533, 536.

Algunos de los criterios que se han utilizado para determinar si hay identidad en cuanto a las causas presentadas en ambos procesos han sido: *"(1) si el mismo derecho ha sido infringido por la misma violación, (2) si hay una identidad tal que una sentencia diferente en la segunda acción destruiría o afectaría derechos o intereses establecidos por la primera sentencia, (3) identidad de fundamentos, (4) si la misma evidencia sostendría ambas sentencias"*. *Mercado Riera v. Mercado Riera*, 100 D.P.R, a la pág. 951.

En el campo del derecho administrativo, la doctrina de cosa juzgada aplica: (1) dentro de la misma agencia, con relación a sus propias decisiones; (2) interagencialmente, es decir, de una agencia a otra; y (3) entre las agencias y los tribunales. *Pagán Hernández v. U.P.R.*, 107 D.P.R., a la pág. 733. No hay duda de que un laudo de arbitraje válidamente dictado constituye una adjudicación sujeta a la doctrina de cosa juzgada.

Sin embargo, la aplicación de la doctrina a los procesos administrativos no es ni automática ni absoluta. Los tribunales tienen la facultad de evaluar si las partes han podido litigar oportuna y adecuadamente la controversia adjudicada en el foro administrativo, pero no deben aplicar la doctrina en forma inflexible, particularmente cuando hacerlo derrotaría los fines de la justicia, o cuando están envueltas consideraciones de orden público. *Acevedo v. Western Digital Caribe, Inc.*, 140 D.P.R. 452, 454 (1996); *Pérez v. Bauzá*, 83 D.P.R. 220, 226 (1961).

En el presente caso, la Unión presentó una querella por despido injustificado contra UPS y se sometió al proceso de arbitraje que exigía el convenio. Entre la querella adjudicada por el árbitro y las causas de acción incoadas por el señor Pagán ante el Tribunal de Primera Instancia, se puede afirmar que existe identidad de partes y la calidad en que lo fueron, ya que la Unión representaba al señor Pagán ante el Negociado y UPS y sus dos empleados son los mismos querellados y demandados en los dos foros. Ciertamente, la Unión y el señor Pagán están unidos por vínculos de identidad en el reclamo.

En cuanto a *"la cosa"*, en ambos foros se ventila el despido del señor Pagán o sus consecuencias, pero en la demanda judicial se alega, además, *"otras cosas"* que bien pueden no de los hechos probados ante el árbitro, tales como las alegadas represalias o el hostigamiento recibido en el lugar de trabajo por llamar al Departamento de Recursos Humanos de UPS a quejarse sobre la violación del convenio o la alteración de las condiciones de trabajo del recurrido.

No podríamos afirmar, sin evaluar toda la prueba del demandante, que hay completa identidad de *"cosas"* en ambos procesos. Tampoco que existe una identidad de *"causas"*. No olvidemos que para invocar con éxito la defensa de cosa juzgada se precisa, no sólo la más perfecta identidad entre las personas de los litigantes y la calidad en que lo fueron, las cosas y las causas, sino también **que la sentencia o el dictamen anterior, por su naturaleza o por disposición de la ley, resuelva definitivamente el asunto**. *Muñoz v. Pardo*, 68 D.P.R. 612, 616 (1948).

Es doctrina reiterada que la autoridad del árbitro para entender en una controversia queda definida por la cláusula de arbitraje convenida y por el acuerdo de sumisión sometido por las partes. Este acuerdo delimita los asuntos a ser decididos extrajudicialmente y es lo que controla, junto con las disposiciones aplicables del convenio colectivo, el ámbito de autoridad del árbitro seleccionado por las partes. *J.R.T. v. Corp. Crédito Agrícola*, 124 D.P.R. 846, 850 (1989). El laudo en el caso de autos concretamente concluye que el señor Pagán incurrió en la falta imputada de *"reiterada renuencia a realizar labores en exceso de su jornada regular"*, [lo que] provocó, *sin razón justificada, la interrupción de las operaciones normales de la Compañía"*. La determinación se basó, no s'olo en la doctrina de disciplina progresiva que impuso la empresa, sino en la doctrina que sostiene que el empleado debe **obedecer primero y querellarse después,** si él entiende que las tareas exigidas no son compatibles con las contenidas en su hoja de deberes. Esta conclusión es de especial importancia para la resolución de la controversia que tenemos ante nos.

A primera vista, puede parecer que ambos procesos se refieren al mismo acto del despido; sin embargo, el señor Pagán presentó en el Tribunal de Primera Instancia sendas acciones al amparo del Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, la Ley Núm. 114 de 7 de mayo de 1942, 29 L.P.R.A. sec. 140 *et seq.*, la Ley Núm. 115 de 20 de diciembre de 1991, 21 L.P.R.A. sec. 194, y del Artículo II, secciones 1, 7, 8 de la Constitución de Puerto Rico. Específicamente alegó que UPS violó su contrato de empleo y que fue despido como parte de un esquema de hostigamiento laboral y en represalia por las quejas que presentó sobre el acoso moral al que fue sometido. Reclamó, a su vez, el resarcimiento de daños y perjuicios, porque UPS lo obligaba a trabajar después de completado su turno, y por violación a su derecho de intimidad.

Aunque en ambos procesos se puede hacer referencia a sucesos y alegaciones similares en torno a las causas del despido del señor Pagán, en el proceso judicial se tendrá que presentar prueba para demostrar trato,

motivaciones y consecuencias distintas a las que fueron discutidas y consideradas en el proceso de arbitraje, particularmente en lo relativo a las alegaciones de discrimen a tenor de la Ley 114, *ante*, y de represalias al amparo de la Ley 115, *ante*, y la violación de derechos constitucionales. No surge del laudo que el árbitro pasara juicio sobre estas alegaciones y que dispusiera expresamente de ellas.

Por lo dicho, puede no haber identidad de causas entre la acción presentada por la Unión contra UPS y otros y la demanda incoada por el señor Pagán contra los peticionarios. En la medida en que el laudo no atendió ni resolvió todas las reclamaciones judiciales que el señor Pagán presentó en contra de UPS y otros, **porque la cuestión sometida al árbitro fue muy acotada**, debemos dar espacio al foro recurrido para que pueda corroborar las distinciones entre la querella y las otras reclamaciones. Sobre todo cuando algunas de las acciones presentadas por el recurrido están sujetas a reglas de adjudicación particulares.

Por ejemplo, en cuanto a la acción de represalias, █ la ley establece una presunción sobre la veracidad del hecho que UPS debe rebatir afirmativamente. █ Este dato ha llevado al Tribunal Supremo de Puerto Rico a resolver que *"[l]a Ley crea una presunción juris tantum de violación a la misma a favor del querellante, al disponer que se establece un caso prima facie una vez prueba que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado en su contra en el empleo. Una vez el querellante establece de forma prima facie su caso, el patrono deberá alegar y fundamentar que tuvo una razón legítima, no de escarmiento, para el despido. Ante esto, el empleado, aún puede prevalecer si prueba que la razón alegada por el patrono es un simple pretexto para el despido discriminatorio"*. *Marín v. Fastening Systems, Inc.*, 142 D.P.R. 499, 511 (1997).

Por otro lado, la Ley 114 dispone expresamente que *"no podrá desestimarse ninguna denuncia por infracciones a las secciones 1 a 4 de esta ley alegando acumulación de faltas cometidas ni por defecto de forma, siempre que la falta o faltas denunciadas estén comprendidas dentro de los términos de dichas secciones"*. 29 L.P.R.A. sec. 143. Nos parece que tampoco deben desestimarse si hay duda sobre su previa y efectiva adjudicación.

Tampoco olvidemos que el propio laudo advirtió al empleado que *"sólo será eximido de su responsabilidad de acatar una orden impartida por un supervisor, [salvo] que entienda que su salud o integridad moral pueda verse en peligro. De esta manera, le corresponde obedecer la instrucción impartida y, posteriormente, acudir al procedimiento de querellas dispuesto en el convenio colectivo aplicable si se entiende que las tareas que se le exige ejecutar no son compatibles con las contenidas en su hoja de deberes"*. Apéndice, pág. 70. Ante esas circunstancias, el no cumplir las órdenes del supervisor, con las consecuencias inmediatas para la empresa, fue lo que generó el despido del recurrido. A esa cuestión se limitó el laudo en cuestión. Por lo menos, eso únicamente surge de su texto.

No erró el foro recurrido al ejercer y retener su jurisdicción en el caso de autos y rechazar la aplicación de las doctrinas de cosa juzgada e impedimento colateral a todas las causas de acción incoadas en el foro judicial.

Nos queda un último pronunciamiento. Los criterios sobre cuándo procede dictar sentencia sumaria son harto conocidos por la profesión legal. Regla 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.2. Cuando existe controversia real sobre hechos pertinentes y esenciales, no debe dictarse sentencia sumaria. Cualquier duda debe resolverse en contra de la parte promovente. *Vera Morales v. Bravo Colón*; res. el 27 de febrero de 2004, 161 D.P.R.___(2004), **2004 J.T.S. 40**. Los hechos de este caso no favorecen tal atrecho procesal. El mecanismo de sentencia sumaria no es apropiado para atender el asunto de autos, como pretende la parte peticionaria, porque hay cuestiones que dependen de la prueba que puedan presentar las partes, lo que exige al foro aquilatarla, dirimir credibilidad y resolver de conformidad.

## III

Por los fundamentos expresados, se deniega el auto solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones